IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

### AT MILLEDGEVILLE,

### DECEMBER TERM, 1866.

Present—JOSEPH H. LUMPKIN, Chief Justice.
DAWSON A. WALKER, } Judges.
IVERSON L. HARRIS,

---

WILLIAM E. ARCHER, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

In administering the Code in trials for murder, founded on direct proof, the Court should not charge the jury that they can recommend to mercy, but should charge distinctly that they can recommend imprisonment in the Penitentiary for life.

Murder.   In Fayette Superior Court.   Tried before Judge WARNER.   September Term, 1866.

The plaintiff in error was tried for the offence of Murder.

At the request of the Solicitor General, the Court instructed the Jury, that if they found the prisoner guilty, they might, if they thought proper to do so, recommend him to the mercy of the Court.

After a verdict of guilty, counsel for the prisoner made this charge one ground, among divers others, of a motion for a new trial.   The Court refused to grant a new trial, and that refusal is alleged as error.

The jury having, by their verdict, recommended the pris-

oner to mercy, the Court sentenced him to confinement in the Penitentiary for life.

TIDWELL & CALHOUN for plaintiff in error.

HULSEY (Solicitor General) and STEWART for The State.

LUMPKIN, C. J.

Archer was convicted of murder in Fayette county, and sentenced to imprisonment for life. He moved for a new trial on various grounds—that the verdict was contrary to evidence, newly discovered evidence, &c. It is complained, that when the Judge asked, if he had omitted to charge anything, he was reminded by the Solicitor General, that he had not stated to the jury that they might recommend to mercy— that the Court made the suggestion, but it seems, without adverting to the new clause in the Code upon this subject.— See Section 4220, par. 5, which reads thus: "The punishment of murder shall be death, but may be confinement in the Penitentiary for life, in the following cases: 1. By sentence of the presiding Judge, if the conviction is founded solely on circumstantial testimony, or if the jury trying the traverse shall so recommend. In the former case it is discretionary with the Judge; in the latter it is not. 2. By commutation of the Governor. 3. By act of the General Assembly."

Thus it will be perceived, there are two cases where the prisoner may be punished by confinement in the Penitentiary for life, if convicted capitally: 1st. When the conviction is founded solely on circumstantial evidence, when the Judge may or may not commute the punishment in his discretion. 2. If the jury trying the traverse shall "so recommend;" in that case it is not discretionary, the Judge is obliged to commute the punishment:—in the latter case, the jury direct the punishment and not the Judge.

Now the Judge, when his attention was called to the sub-

ject by the Solicitor General, said to the jury, that they might recommend to mercy, and they accordingly did so; but that was not the idea of the Code.   It was not that the jury should recommend to mercy, but that they should recommend specifically that he should be imprisoned in the Penitentiary for life, instead of being hung.   Perhaps, if this alternative had been distinctly presented to the jury, they might have found an inferior grade of homicide.   True, the Judge, with that humanity which characterized his conduct throughout the trial, seized upon the recommendation to mercy to commute the punishment from death to perpetual imprisonment, although this form of the recommendation was not authorized by the Code.   Still, I repeat, that the jury might not have found the prisoner guilty of murder, if they had known that their recommendation to mercy was to have the effect of imprisoning him for life.

As all the other irregularities complained of may be corrected on another trial, it is needless to allude to them now; and we especially refrain from expressing any opinion upon the facts of the case.   On the main point, viz: who made the first attempt to shoot, hangs their case; and as to that, the testimony is contradictory.   It is peculiarly for the jury to settle that matter.

We cannot but express our regret, as we have done before, that counsel for the State should permit their zeal to betray them to comment upon facts not proven before the jury. They owe it to themselves as honorable men to abstain from this too common practice.   And even in this Court, where there is no excitement to mislead them, counsel here permit themselves to state facts not in the record, and this makes a lodgment in the mind, which, if it does not warp our judgment, embarrasses the investigation.   This practice might justify a stern rebuke, even to the setting aside of the verdict procured, in part, in this way; but we trust this reprobation of the practice, again solemnly reiterated, will suffice to cure the evil.   To an ingenuous mind the consciousness of having contributed to deprive a fellow-creature of life, or

liberty, by forcing into the argument of the case gratuitous statements, not authorized by the proof, would, it seems, be punishment enough.

Judgment reversed.