GUSTAVUS PETERSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. In an indictment for murder, by shooting with a pistol, it is not necessary to aver that the pistol was loaded with gunpowder and a leaden ball, or that the fatal wound was inflicted with a ball. If the indictment state the offense so plainly that the nature of it may be easily understood by the jury, it is sufficient: Code, section 4535.

2. Where the Court examines a child to test its competency as a witness, and pronounces it incompetent, it must be a very flagrant case of error to authorize this Court to reverse the judgment. The present is no such case.

3. If the State give in evidence the confessions of the prisoner, he is entitled to prove all that was said by him in the same conversation, but not the impressions made upon the mind of the witness testifying to the conversation, where such impressions are the mere deductions of the witness drawn from the conversation.

4. The jury cannot, by recommendation, commute the punishment of murder from death to imprisonment for life, under section 4257 of the

Code, except when the conviction is founded solely on circumstantial testimony.

5. It is not error in a murder case for the Court to charge that "a reasonable doubt is such as an upright man might entertain in an honest investigation after truth, from the evidence."

6. The verdict is not contrary to the charge of the Court.

Criminal law. Indictment. Witness. Confessions. Opinions. Recommendation to imprisonment for life. Reasonable doubt. Before Judge Strozier. Dougherty Superior Court. June Adjourned Term, 1872.

Gustavus Peterson was placed upon trial for the murder of John Sims, alleged to have been committed April 2d, 1872. The defendant pleaded not guilty. The evidence made the following case:

The defendant was standing on the railroad bed when he shot John Sims; the deceased and his wife, a colored woman named Alice, were in a house; the defendant's wife had recently given birth to a child; defendant called to Alice and asked her to bring his child out there; Alice replied she did not wish to go out there; the deceased said take his damned child out there; Gustavus said, "come out here sir, and tell Alice to give me my damned child;" deceased then went to the door and said, "come out here, Alice, and give him his damned child;" defendant said "come clear out here, and tell Alice to give me my damned child;" deceased went out and said it; defendant then said, "John, you are the occasion of me and Alice being parted;" deceased replied, "how am I the occasion of it;" defendant said, "you were the cause of it, with your damned smartness." They then commenced cursing each other, the defendant having somewhat the advantage in the war of profanity. Defendant drew a pistol, shot deceased twice, and then ran towards town as rapidly as possible. At the first shot, deceased fell on his knees, at the second, he came into the lot and asked for help. Alice was deceased's wife.* She was living in a new house off from Craw-

---

*The record is strictly followed in this allegation, though the rest of the evidence would seem to show that Alice was defendant's wife.

ford Broadnax's.   Deceased was living down by the railroad. The defendant confessed that he committed the homicide, alleging, at the same time, that deceased had a knife.

The jury found the defendant guilty, and recommended him to the mercy of the Court.   Whereupon the defendant moved for a new trial, upon the following grounds, to-wit:

1st.   Because the Court erred in refusing to quash the indictment, because it was not alleged therein that the pistol was charged with gunpowder and a leaden bullet, and that such leaden bullet, or any bullet, struck deceased and produced the wound of which he died.

2d.   Because the Court erred in ruling Ellen Benton to be a competent witness, she appearing to be a mere child about three feet and a half high, and about seven or eight years old, said Ellen having, among the answers to questions put to her by the Court, stated that if she told a story she would be put in jail as a punishment therefor.

3d.   Because the Court erred in excluding the impressions of the witness, Kemp, said witness having testified that the impression made on his mind, by the confessions of defendant was, that the deceased was after him with a knife, and that the defendant was justifiable in shooting.

4th.   Because the jury found contrary to the following charge: (This charge was merely the reading to the jury the different grades of homicide, and the circumstances of justification as found in the Revised Code.)

5th.   Because the Court erred in omitting to charge the jury as follows: "The punishment of murder is death, but may be commuted to confinement in the penitentiary for life in the following cases:   By sentence of the presiding Judge, if the conviction is founded solely on circumstantial testimony, or, if the jury trying the traverse, shall so recommend.   In the former case, it is discretionary with the Judge; in the latter, it is not."

6th.   Because the Court erred in the following charge: "If there exists any reasonable doubt from the testimony of defendant's guilt, you should give him the benefit of such doubt.

A reasonable doubt is such an one as an upright man might entertain in an honest investigation after the truth, from the evidence."

The Court overruled the motion for a new trial, and sentenced the defendant to be hung. The defendant excepted upon each of the aforesaid grounds, and now assigns error thereon.

D. H. POPE; SMITH & JONES, for the plaintiff in error.

JOHN C. RUTHERFORD, Solicitor General, for the State.

MONTGOMERY, Judge.

1. Many English Judges have regretted the nice technical particularity required by the common law in indictments. Fortunately for the preservation of the good order and peace of this State, it has for many years only been necessary to state the crime "so plainly that the nature of the offense charged may be easily understood by the jury:" Code, 4535. The indictment charges that the prisoner "did shoot off and discharge said pistol at, in and upon the said John Sims, (the person slain,) and upon the left side of the said John Sims did inflict one mortal wound, of the breadth of one half inch, and depth of six inches, of which mortal wound the said John Sims, on, etc., in the county aforesaid, died." Is not the nature of the offense so plainly stated as to be easily understood by the jury? To ask the question is to answer it.

2. The Court must, by examination, decide upon the capacity of a witness alleged to be incompetent on account of childhood: Code, 3803. This is one of those cases that must, from its very nature, be confined almost exclusively to the Judge of the Superior Court. He has the child before him. We can only judge of its capacity from written evidence. In this case, we are asked to reverse the Judge's ruling on this point because of the answer of the child, who is alleged to be seven or eight years, to a single question. What the question was, the record does not inform us. We are only told that

"said Ellen, among the answers to questions put to her by the Court, said if she told a story she would be put in jail, as a punishment therefor." Is not the statement true? Surely, if one commits perjury, that is precisely what would be done with him in the first instance, in the absence of bail. Of course, so flagrant an abuse of discretion on the part of the Court below may be imagined as would justify correction by this Court. The present is no such case.

3. One part of a conversation being given in evidence, the opposite party may prove the whole. But to allow the witness to state the deductions drawn by him from the conversation is at once to trench upon the province of the jury, and to transform the witness, *pro hac vice*, into a juror: *Woodward vs. Gates*, 38 *Georgia*, 205. A witness may infer a previous difficulty between parties from their conduct. Information so derived does not make him competent to prove it. An examination of *Printup vs. Mitchell*, 17 *Georgia*, 561, and of *Lockett vs. Mims*, 27 *Georgia*, 210, relied on by plaintiff in error to support his position on this point, will show that they fail to sustain him. The witnesses in both cases testify to facts as they saw or heard them. The inference of a witness is inadmissible, where that inference is a mere conclusion drawn from facts: *Martin vs. State*, 38 *Georgia*, 297. In short, whatever language a witness may use, if he is evidently testifying to his recollection of facts, as he saw or heard them, the evidence is admissible: *Franklin vs. The Mayor*, etc., 12 *Georgia*, 260. So, an expert may give his opinion upon a hypothetical state of facts, and an ordinary witness may sometimes give his opinion as to the existence of an ideal fact—one capable of being perceived, but not seen or heard; as, for instance, the affection existing between man and wife, the value of property, the sanity of an individual, perhaps, the age of a person, handwriting, etc.* In such cases, the ordinary witness is required to state the facts upon which his opinion is founded. But

---

*A distinction is to be observed between testifying to an act of writing and testifying to handwriting. Any witness to an instrument, entirely ignorant of the handwriting of the maker, may do the former. Such testimony excludes the idea of forgery absolutely. Testimony to the handwriting does not so effectually.

when he attempts to deduce a substantive fact (so to call it) from what he has seen or heard, he gets beyond the province of a witness and enters the domain of a juror. To apply the principle to the present case: The fact, if such was the fact, that the deceased approached the prisoner, knife in hand, in a hostile manner, was a fact of substance, capable of being seen. If the prisoner, in the conversation about which the witness testified, had *said* the deceased so approached him, the testimony would have, of course, been admissible, (that would have been a substantive fact heard by the witness,) but the *inference* of the witness, that such was the case, is not. See *Potts vs. House,* 6 *Georgia,* 324.

4. In *Long vs. the State,* 38 *Georgia,* 491, this Court decided that "the jury, in a murder case, have no right authoritatively to recommend in lieu of the death penalty imprisonment for life, except when the conviction is founded solely on circumstantial evidence." In this case Ellen Benton testified that she saw the prisoner shoot the deceased. Hence, to have given section 4257 of the Code in charge to the jury would have been charging law not applicable to the case.

5. The charge of the Court that " a reasonable doubt is such an one as an upright man might entertain in an honest investigation after truth from the evidence," is more favorable to defendant than perhaps a strictly accurate definition of a reasonable doubt might warrant. It leaves the inference open to the jury that any doubt, which an upright man might entertain of the prisoner's guilt, would justify an acquittal.

6. We do not think the verdict contrary to the charge of the Court.

Judgment affirmed.