MARTHA A. MERRITT, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

1 Unless the conviction of the offense of murder is founded solely on circumstantial testimony, neither the presiding judge nor the jury has authority to commute the punishment from death to that of imprisonment for life in the penitentiary.

2. The circumstantial testimony which authorizes the commutation of the punishment for the offense of murder, is that which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed.

3. The courts are as much bound to decide and administer the law in criminal cases, as in all other cases confided to their jurisdiction by the constitution and laws, and juries are bound to conform thereto.

4. Where the evidence of the homicide having been committed by the defendant is direct, and the jury returns a verdict of guilty, but recommending that the defendant be imprisoned for life in the penitentiary, the verdict should be set aside as illegal.

Murder. Commutation. Circumstantial evidence. Jury. Verdict. Sentence. Before Judge STROZER. Dougherty Superior Court. April Term, 1873.

For the facts of this case, see the decision.

H. MORGAN, for plaintiff in error.

B. B. BOWER, solicitor general, for the state.

WARNER, Chief Justice.

Martha Ann Merritt was indicted for the offense of murder, in the superior court of Dougherty county, and charged with the unlawful killing of one Polly Ann Quick. On the trial of the case, the jury found the defendant guilty, and recommended that she be imprisoned in the state penitentiary for life. A motion was made for a new trial on the grounds that the verdict was contrary to law, and without law, contrary to the evidence, and the weight of the evidence, and because of newly discovered evidence since the trial, which motion was overruled by the court, and the defendant excepted.

It appears from the evidence in the record that the defendant and deceased got into a quarrel about the defendant's husband; the parties lived near each other; a paling fence divided their respective yards or lots. The deceased was on her own side of the fence, standing up against it. Lizzie Moore, a witness for the State, swore that she was present and saw the rencountre between the parties, that after using abusive and opprobious language to each other, the defendant went into her house, laid down her child, went to a table, picked up a knife, and then came out of the house, rolled up

her sleeves, opened the knife, approached deceased, who was standing with her hands on the palings, made a stab at her and hit the palings; she again stabbed and struck deceased in the right breast, immediately under the right nipple. Deceased said, "Don't cut me any more, for you have killed me now." Defendant then said, "God damn you, if I have not killed you, I am going to do it now, you and all the balance." The knife was about a foot long when open, handle about six inches long, and blade same length. Witness saw that the whole blade went in when deceased was stabbed. This took place on Friday, and deceased died the following Sunday.

Lucy Chapman, a witness for the State, was also present; saw the stabbing and substantially corroborates the statement of Lizzie Moore; says deceased was in her own yard doing nothing; had her hands on the palings; helped deceased into her room; she was bleeding, and remained with her until she died; she appeared to suffer very much.

Doctor Davis, a witness for the state, says he made a *post mortem* examination of deceased after her death; found a wound on the right breast made by some sharp instrument, which entered into the chest; it was about one inch wide, and five or six inches deep. The wound penetrated the diaphram, and punctured the liver. The wound, in his opinion, would produce death, and in his opinion, that wound did produce death in that case, from the result of inflammation.

Doctor Cromwell, sworn in behalf of the defendant, stated that he saw the deceased on Sunday, the day she died; described her condition, and was of the opinion she died of pneumonia, though from the description of the wound given by Doctor Davis, thinks it would, in a majority of cases, have produced death.

It will be noticed that there is no evidence in the record that the deceased was physically indisposed from pneumonia, or otherwise, prior to the day on which she was stabbed by the defendant, which was on Friday, and she died the next Sunday thereafter.

1. As before stated, the jury, by their verdict, found the

Merritt *vs.* The State of Georgia.

defendant guilty of the offense for which she was indicted, and recommended that she be punished therefor by imprisonment in the penitentiary for life, and the question is, whether that was a legal verdict under the evidence in this case? In other words, had the jury the power and authority, under the law of this state, to return a verdict recommending a commutation of the punishment of the defendant from death to imprisonment in the penitentiary for life, under the evidence in the case? The defendant was indicted for the offense of murder, and the jury found her guilty of that offense. By the penal code of this state the punishment of murder shall be death, except when the conviction is founded *solely* on circumstantial testimony. When the conviction is had solely on circumstantial testimony, then it is discretionary with the presiding judge to impose the death penalty or to sentence the defendant to imprisonment in the penitentiary for life, unless the jury trying the traverse shall recommend that the defendant be imprisoned in the penitentiary for life, in that case the presiding judge has no discretion, but is bound to commute the punishment from death to imprisonment for life in the penitentiary. The general rule of the law is that the crime of murder shall be punished with death, the only exception to that general rule is, when the conviction for that crime is founded *solely* on circumstantial testimony: Code, 4323. It follows, therefore, that unless the conviction of the defendant was founded *solely* on circumstantial testimony, neither the presiding judge nor the jury had the power or authority, under the law, to commute the punishment for the crime of murder from death to that of imprisonment for life in the penitentiary.

2. But it is said the testimony in this case is circumstantial, because it is doubtful whether the deceased died from the wound inflicted by the defendant or from pneumonia. If the deceased died from pneumonia, then the defendant was not guilty of the offense charged against her in the indictment. But the jury found her guilty of the offense charged against her, which *negatives* the fact that the deceased came to her death by pneumonia, or from any other cause than the one al-

leged in the indictment. Was the cause of the death of the deceased, as alleged in the indictment, proved solely by circumstantial testimony? The testimony of the two witnesses who were present and saw the wound inflicted by the defendant upon the body of the deceased, was direct and positive; there is no circumstantial testimony in regard to the infliction of the wound on the body of the deceased, as alleged in the indictment, and which the jury have found caused her death. Their verdict, as to the truth of that charge, could not possibly have been founded solely on circumstantial testimony, when the two witnesses who were present and saw the wound inflicted, swore directly and positively to the fact. If, however, we consider circumstantial testimony and circumstantial evidence to mean the same thing, then direct evidence is defined by our code to be that which immediately points to the question at issue; circumstantial evidence is defined to be that which only tends to establish the issue, by proof of various facts sustaining by their consistency the hypothesis claimed: Code, 3748. It is therefore but reasonable to say that the circumstantial testimony, as contemplated in the 4323d section, which authorizes a commutation of the punishment of murder from death to imprisonment for life in the penitentiary, shall be the same as defined in the 3748th section. Our own Code clearly defines the distinction between direct evidence and circumstantial evidence, and the words " if the conviction is founded solely on circumstantial testimony," contained in the 4323d section, should be construed in accordance with that definition, and when so construed and applied to the evidence in the record before us, there was no circumstantial testimony as to the fact of the killing of the deceased by the defendant, as charged in the indictment on which her conviction was founded, much less was that conviction founded *solely* on circumstantial testimony. The punishment for murder, under our law, in all cases, is death, except in one instance only, and that is when the conviction is founded *solely* on circumstantial testimony. In all convictions for murder, except the one stated, the courts have no power or authority

under the law, to inflict any other punishment than the death penalty, nor have juries any power or authority, under the law, by their verdicts, to recommend any other punishment, except when the conviction is founded *solely* on circumstantial testimony.

3. But it is said that the juries being the judges of the law and the facts in criminal cases, the courts cannot interfere and set aside this verdict as illegal on the motion of the defendant. This argument would prove entirely too much. The practical effect of it is to require the courts to *abdicate* their constitutional power and jurisdiction in respect to the administration of the laws of the state, and subject the legal rights of the citizen to the exclusive arbitrament and decision of the juries of the country. If the argument is sound, and the courts have no power or authority to decide what is the law of the land in criminal cases, but the juries have the exclusive power and authority to decide what is the law, then they would have the power and authority to decide that any law enacted for the punishment of crimes, from murder down to the lowest grade of felony, was unconstitutional and void, and that no one should be punished for a violation thereof, or if punished at all, should be punished at their discretion, and not as the law prescribes. The courts are as much bound to decide and administer the law in criminal cases as in all other cases confided to the jurisdiction thereof, by the constitution and laws of the state. Where is the power vested by the constitution, to decide what is the law of the state applicable to the trial of criminal offenses, including the constitutionality of legislative acts, in the courts or in the juries of the country ? If the argument is sound that the juries have the exclusive power to decide what is the law of the land in criminal cases, independent of the courts, it necessarily follows that they have the power to decide the constitutionality of all legislative acts defining criminal offenses.

4. Inasmuch as the jury, under the testimony disclosed by the record in this case, had no power, or authority, under the law, to recommend by their verdict a commutation of the

death penalty to that of imprisonment in the penitentiary for life, the verdict was illegal, and should have been set aside on the defendant's motion.

Let the judgment of the court below be reversed.

McCay, Judge, concurred on special grounds, but furnished no written opinion.