## Shaw *vs.* The State.

1. Where the husband was on trial for the homicide of his wife, evidence that the state of feeling between them was bad was admissible, especially where it tended to corroborate a witness sought to be impeached.

2. Declarations by a husband that he had beaten his wife, and thought he had the right to do so, though made about four years before the homicide, were admissible to show the probability of his committing the crime, it having been done partly by beating.

3. Where there was direct evidence of defendant's guilt, even though the witness who gave it was ignorant and weak-minded, and admitted to having previously made contradictory statements under the influence of fear, the court did not err in charging the jury that a recommendation to mercy would be of no avail.

4. The verdict is supported by the evidence.

BLECKLEY, Judge, dissented.

Criminal law. Evidence. Charge of Court. Witness. Before Judge BARTLETT. Baldwin Superior Court. August Term, 1877.

Reported in the opinions.

DuBIGNON & WHITFIELD; J. W. LINDSEY, for plaintiff in error

R. N. ELY, attorney general; J. W. PRESTON, solicitor general; JACKSON & LUMPKIN, for the state.

WARNER, Chief Justice.

The defendant was indicted for the offense of murder and charged with having killed his wife in the county of Baldwin. On the trial of the case, the jury, under the evidence and charge of the court, found the defendant guilty. A motion was made for a new trial on the several grounds therein set forth, which was overruled by the court, and the defendant excepted.

It appears from the evidence in the record, that the deceased was found dead at the defendant's house on the morning of the 30th of April, 1877, shot in the head with a pistol ball, had several gashes on the left side of her head, and one of her arms was broken, there was a pine knot there with blood on it. Defendant said his little child about four years old told him that two negroes had killed his wife, and requested the witness, Dr. Harris, to examine her person to see if it had been violated, which it had not, said his pistol had been stolen from the house. Mrs. Moore, mother of de-

ceased, testified that defendant and deceased were at her house the evening before her death and were quarreling, and she saw that defendant was mad, and witness was feeling uneasy about her daughter when she saw the defendant coming to her house the next morning with his child in his arms, when witness ran to him and asked what is the matter. · He replied : " Somebody has been there and killed Daisy, that he heard a lumbering at the house, and when he got there found the child standing by its mother, and asked witness what he must do, must he send for the dogs to run the negroes." Witness told him to go back to the house. Witness saw fresh scratches on defendant's face and· mouth as soon as she saw him, seemed to have been done by finger nails, there were spots of blood on defendant's face, and there was blood on the child. The evening before the defendant had on a white shirt. The state of feeling· between defendant and deceased was never very good. Mrs. Freeny testified that she was at the house of defendant after deceased was killed, saw a white shirt lying on the bed there, 'with blood on the sleeves, did not know whose shirt.it was. Anderson, a justice of the peace, testified that in 1873 defendant said he had beaten his wife, and thought he had a right to beat her. But· ler, a, witness for the state, testified that he was living with defendant when his wife died, did not see her killed, but heard her hollering. Defendant was in the lot currying off his mule, and told witness to get the gear and put it on the mule, which he did, and went to plowing, could see the house plain from where he was plowing, could see anybody in the door. Witness heard the pistol fire, stopped his mule and looked down towards the house, saw defendant when he went out of the house through the horse-lot, was going pretty pert and came to the new ground where witness was, told him he had killed his damned wife, and if he said anything about it he might look out ; told witness to put up the mule, and go for Mr. Moore, which he did ; defendant did not remain long, don't know where he went then. Witness heard Daisy holler, " Mike have mercy on me and don't kill me

this time;" that was not long before the pistol fired. When witness went to the house found deceased lying on the ground near the door-steps, saw no other man, white or black, about the house but the defendant. Witness left defendant at the house when he went to the field, he was then quarreling with deceased, but witness does not know what it was about. Witness kept it a secret about defendant's killing his wife, did say on the committal trial that the pistol fired in the direction of defendant's house while defendant was cutting logs in the new-ground; witness said so because he was scared into it, and moved away because he was afraid to stay in that neighborhood. Witness left defendant at the house, and he did not go to cutting in the new-ground. McComb testified that it was about 180 steps from the house to where the plow was in the field where the witness, Butler, was plowing. Could see a person in the door of the house. Edwards testified that it was 143 steps from the house to the plow. Went to where it was said defendant was cutting, saw no wood cut there. Bonner and Bagby testified that they were acquainted with the general character of the witness, Butler, and from their knowledge of it would believe him on his oath in a court of justice. There was no attempt to impeach the general character of Butler for truth and veracity by any witness, but only from his contradictory statements before referred to.

In view of the previous rulings of this court, and the explanatory notes of the presiding judge annexed to the bill of exceptions, there are but four grounds of error to be considered. First, as to the admission of the evidence of Mrs. Moore contained in the record. Second, as to the admission of the evidence of Anderson as hereinbefore set forth. Third, because the court charged the jury " that if they believed from the evidence that the defendant was guilty, he was guilty of murder, and no recommendation from them would be regarded, and that it could not affect the judgment of the court," the counsel for the defendant insisting it was a proper case under the law for the jury to recommend that

the defendant be imprisoned for life.    Fourth, because the verdict was contrary to law and the evidence.

1. There was no error in admitting the evidence of Mrs. Moore and that part of it which was specially objected to, to-wit : that the state of feeling between defendant and deceased was never good.    The bad feeling that existed between the defendant and his wife was a circumstance going to corroborate the testimony of Butler that they were quarreling when he left the house that morning and went to the field. Persons, especially man and wife, between whom a bad state of feeling existed, that is to say, who did not get along well together, would be more likely to be quarreling than those between whom good feeling had always existed.

. 2. There was no error in admitting the evidence of Anderson as to the declaration of the defendant to him in 1873, that he had beaten his wife, and thought he had a right to beat her.    Although this declaration of the defendant, made in 1873, was not evidence that he did beat his wife at the time of her death in 1877, still it was a circumstance going to show that he was capable of doing that thing, and would have been more likely to have beaten her with that lightwood knot found there with blood on it, than a man who never had beaten his wife, and who did not claim the right to do so.    The theory of the prosecution for the state was that the parties were quarreling, that defendant beat her and broke her arm with the lightwood knot, and finally shot her with his pistol, and that it was when he drew his pistol on her that she exclaimed, " Mike have mercy on me and don't kill me this time." ·

3. There was no error in the charge of the court as to the recommendation of the jury, in view of the evidence in the record.    If the evidence of Butler is to be believed, then there was positive and *direct* evidence of the defendant's guilt, and he was not convicted *solely* on circumstantial evidence.    It is true that Butler appears to be an ignorant, simple, weak-minded man, and made contradictory statements through fear of the defendant, as stated by him.    Two wit-

nesses who were acquainted with his general character, swore that they would believe him on his oath in a court of justice, and their testimony was not controverted. A jury of the vicinage before whom he testified believed him, and his testimony was corroborated by the facts testified to by other witnesses. Butler was a competent witness to testify in the case, or he was not. No objection appears to have been made to his *competency,* but only to his *credibility;* the jury believed him, and that being so, the defendant was convicted upon his direct testimony that the defendant said he had killed his damned wife when he came to him in the field where he was plowing. The 4323 section of the Code declares "that the punishment of murder shall be death, but may be confinement in the penitentiary for life in the following cases: By sentence of the presiding judge, if the conviction is founded solely on circumstantial testimony, or if the jury trying the traverse shall so recommend. In the former case it is discretionary with the judge; in the latter it is not." The interpretation given to this section of the Code by this court, is that the punishment of murder when the defendant is convicted of that offense by *direct* testimony, shall be death, and unless the conviction is founded *solely* on circumstantial testimony, the jury have no legal right to commute the punishment for that offense by recommending imprisonment for life in the penitentiary. In other words, when the defendant is convicted of murder by *direct* testimony, the jury cannot commute the punishment of death as prescribed by the law of the state, by any recommendation which they may make. *Merritt vs. The State,* 52 *Ga. Rep.,* 82 ; *Guilford vs. The State,* 24 *Ga. Rep.,* 322 ; *McGinnis vs. The State,* 31 *Ga. Rep.,* 263 ; *Long vs. The State,* 38 *Ga. Rep.,* 492 ; *Peterson vs. The State,* 47 *Ga. Rep.,* 529. This cannot now be considered an open question in the courts of this state, but if it was, I should hold that the general assembly never intended by the words of the section of the Code before cited, that the offense of murder, that great crime, when proved to have been committed by *direct* testimony, should be pun-

ished otherwise than with death.   The exception made by the statute is when the conviction is founded *solely* on circumstantial testimony.   If it was intended that the punishment of murder when proved by direct testimony should depend on the recommendation of the jury, why did not the general assembly declare that the punishment of murder shall be death, unless the jury trying the traverse shall otherwise recommend?   Why have said anything about the conviction being founded *solely* on circumstantial testimony?   But the general assembly, with a full knowledge of the interpretation which had been given to the 4323d section of the Code by this court, passed the act of 25th of February, 1875, by which it is declared that, " if in any capital case of homicide the jury shall make any recommendation where not au thorized by law to make a recommendation of imprisonment for life, the verdict shall be construed as if made without any recommendation."   The general assembly in dealing with the question, expressed no dissatisfaction with the interpretation given by this court of the 4323d section of the Code, but, on the contrary, by implication at least, approved it.   See acts of 1875, page 106.

4. If the jury believed the witnesses for the state (and that was a question for them), then there was sufficient evidence to sustain their verdict, and it was not contrary to law.   There was no error in overruling the defendant's motion for a new trial on the statement of facts contained in the record.

Let the judgment of the court below be affirmed.

JACKSON, Judge, concurring.

The court is agreed in this case upon all the grounds ta ken in the motion for a new trial except that in respect to the power of the jury in recommending the defendant to mercy, or imprisonment in the penitentiary for life, in lieu of the death penalty.

That power is found in section 4323d of the Code, which is in these words :

" The punishment of murder shall be death, but may be confinement in the penitentiary for life in the following cases : By sentence of the presiding judge, if the conviction is founded solely on circumstantial testimony, or if the jury trying the traverse shall so recommend. In the former case, it is discretionary with the judge ; in the latter it is not."

The act of 1875 amends the section, but not in any manner, I think, to change the construction of it as regards the point now under consideration.

If the section were open for construction now for the first time, I should be inclined to agree in the view of it taken by Judge Bleckley ; but it has been twice—perhaps oftener —deliberately ruled by this court that the jury have the power to recommend the punishment of imprisonment *only* in cases where the evidence is circumstantial. See *Long vs. The State,* 38 *Ga.,* 491 ; *Peterson vs. The State,* 47 *Ga.,* 524 ; *Meeks vs. The State,* 57 *Ga.,* 329 ; *Regular vs. The State,* 58 *Ga.,* 264.

The case of *Archer vs. The State,* in 35 *Ga.,* 5, arose upon a different question ; and this point was not argued before the court in that case.

In my judgment, it is of more practical utility to have the law settled and let it remain so than to open it to new constructions, however obvious such constructions may appear, as the *personel* of the court may change. *Stare decisis* is conservatism in practice, and conservatism is the preservation of that wisdom which comes from the experience of the past. A line of adjudication, with no unbroken link, ought to be invincible; and the general assembly tried to make it so. Section 217 of the Code is in these words : "A decision concurred in by three judges cannot be reversed or materially changed, except by a full bench, and then after argument had, in which the decision, by permission of the court, is expressly questioned and reviewed ; and after such argument the court in its decision shall state distinctly whether it affirms, reverses or changes such decision."

The decisions on this statute have not been so questioned

in this case, and argument has not been had upon them in accordance with the statute. Having been made by three judges of this court concurring, those decisions must, therefore, stand; and the statute, as construed by them, is law. The chief justice adheres to the interpretation the court then put upon the power of the juries in murder cases, and the other members of the present bench could not, if we would, overturn the settled law.

In the case now before us, however, the court said to the jury, in substance, that he would not regard any recommendation made by them, as he regarded the case to be one in which the evidence was direct; and the question arises, who is to determine the point whether " the conviction is founded solely on circumstantial testimony," the presiding judge or the jury?

If the jury failed to pass upon the question, of course the presiding judge must determine it, if he desired, in his discretion, to inflict the lighter penalty, *McGinnis vs. The State,* 31 *Ga.,* 236-263 ; but in the event that the jury discarded the direct evidence and founded the conviction *solely* on the circumstantial testimony, how then ?

In such a case, it would seem that the jury, as they convict the defendant, ought to be permitted, without interference by the court, to pass upon the question, and to recommend the lighter grade of punishment if they wished to do so ; but, in my judgment, the question does not practically arise in this case, for the reason that the direct evidence— the confessions of the defendant (*Mercer vs. The State,* 17 *Ga.,* 171)—and the main circumstantial evidence—that without which no conviction was possible—all depended upon the credibility of the same witness. Withdraw the testimony of Butler, and nothing of evidence, either direct or circumstantial, is left on which a verdict could be based. I have no doubt, therefore, that the jury believed him, and they are the legal judges of his credibility ; and believing him their verdict must have been founded upon the defendant's confessions to him as well as the circumstances detailed by

him. Hence it could not have been a conviction founded *solely* on circumstantial evidence; and, therefore, the remark of the judge that he would not regard a recommendation did not hurt the defendant. Its effect was to put the case on the pivot on which it turned—the credibility of Butler—as the jury believed or disbelieved him, so ought the verdict to be; and so it must have been. See 31 *Ga.*, 236.

I have read with much deliberation every line of the record in this case with the view to concur, if my own judgment would permit me, with my brother Bleckley in the conclusion he has reached to grant to defendant a new trial; but I find nothing in the case which has enabled me to do so.

The witness on whose testimony the state rests the case is a very weak and ignorant man, with very little intelligence, natural or acquired, and his credibility, too, was assailed by the defense; but his evidence is corroborated by circumstances detailed by other witnesses sufficient to support what he narrates, though not, of themselves, enough to convict upon; and he is sustained as a man of veracity by several witnesses. The truth is that a fool is rarely a knave; and little children and fools are apt to tell the truth, because they have not the capacity to invent a lie; and this man's evidence impresses me, as it did the jury, that he told the truth, like a child.

The prisoner made no statement—no explanation—either on trial or when arrested, or first charged with the murder; he remained as dumb as the wife whose voice he had hushed forever, probably to prevent her from again having him arrested for another assault and battery; upon such a charge as the murder of his own wife, an innocent man would have spoken out; to remain silent under the accusation of so foul a deed, when he had the right to speak, was almost to confess the crime; love for the lost, and indignation against his accusers, would have so filled his heart that its abundance must have overflowed in speech. Whilst we have held that though it is a defendant's right to explain when on trial, yet his silence *then* shall not be construed against him, yet this

man *at no time* explained his conduct in respect to the shirt —the hat—the lightwood knot—the blood, or anything else, nor did he manifest indignation that the deed was done.

This court agreeing on all the legal questions raised except the construction of the statute empowering the jury to recommend the punishment in certain contingencies in cases of murder, and my own mind being satisfied that, in this case, under the facts disclosed in this record, no hurt was done to the defendant upon that point by the instructions of the judge thereon, and being satisfied, moreover, of the guilt of the defendant, I concur in the judgment affirming that of the superior court.

BLECKLEY, Judge, dissenting.

The witness who gave direct testimony against the prisoner was not a child but a man. Besides contradicting what he had sworn to at the committing trial, he testified before the jury that he did not know what state he lived in, nor how many months are in a year, nor how many days are in a week; also, that he could not count ten, and had never tried. Grant that it is a correct construction of the Code, touching the punishment of murder, that the jury are without power to recommend imprisonment for life except where the conviction is founded solely on circumstantial testimony, still, where some of the evidence is direct, and some of it circumstantial, it is the right and duty of the jury, in making their finding, to disregard any of either kind which they believe to be false or unreliable, and if they, in fact, found their verdict of guilty exclusively upon evidence which is circumstantial, they may recommend imprisonment for life, and the presiding judge will be bound by the recommendation in pronouncing sentence. Where there is some testimony of each kind before the jury, and the part that is direct has obvious infirmities which tend to nullify or impeach it, the jury should not be warned from the bench that they have no power to recommend imprisonment for life. They

should be left free to so recommend in the event they deem all the direct evidence untrustworthy, and base their verdict on the circumstantial testimony alone.

Is it not, however, a misconstruction of the Code to limit the power of recommendation to cases of circumstantial evidence? " The punishment of murder shall be death, but may be confinement in the penitentiary in the following cases : By sentence of the presiding judge, if the conviction is founded solely on circumstantial testimony, or if the jury trying the traverse shall so recommend.  In the former case, it is discretionary with the judge; in the latter, it is not." Was it not intended to make commutation discretionary with the jury, where the evidence was of both kinds, or all direct, (35 *Ga.*, 5), and with the judge, where the evidence was wholly circumstantial? Or was not the scheme broader still in regard to the power of the jury—might not the jury commute in *all* cases, without exception, the discretion of the judge being restricted to those cases of circumstantial evidence in which the jury chose to be silent as to the punishment? If, indeed, it is ever too late to forsake error and return to truth, it seems too late now to urge these questions.  38 *Ga.*, 492; 47 *Ib.*, 529; 57 *Ib.*, 329; 58 *Ib.*, 264; acts of 1875, p., 106.  But without disturbing past adjudications, a new trial can and should be granted in the present case.  So thinking, I dissent from the judgment of the court.