Mr. Justice Morris
delivered the opinion of the Court:
*339 Three questions arise in the case: ist. As to the competency of the child Dellie Berry to testify; 2d. As to the alleged variance in regard to her name between the indictment and the proof; 3d. Whether the offense complained of constituted the statutory crime of larceny. And these questions, it may be remarked, are entirely dissociated from any doubt in regard to the guilt of the appellants; for that is not controverted; and it has been proved by other testimony than that of the child beyond all reasonable doubt. The questions, therefore, are almost in the nature of abstract questions, so far as it is possible to have such questions in a concrete case; and may be treated with all the dispassionateness of abstraction. But even conceded guilt must be dealt with in accordance with the established forms of law; and conviction of crime should not be based upon objectionable testimony. We proceed to consider these questions in their order.
1. As to the competency of the child Dellie Berry to testify. We have no doubt that the learned judge who tried this case was, right in the conclusion reached by him on this point; and we are not at all sure that his decision of the question is a proper subject of review by us under the circumstances of the case. Certainly, with the child before him, he was more competent than we can be to determine the extent of her intelligence and the degree of moral responsibility of which she was capable; and with his determination of that question we ought not to interfere without grave reason therefor, especially when we remember that the jury, too, had to pass upon the same question, and did virtually pass upon it in estimating the credibility of the witness. It seems to us that only a grave abuse of discretion would warrant our interference with the action of the trial judge in such a case; and there is no pretence of any such abuse of discretion. Peterson v. State, 47 Ga., 524 ; Commonw. v. Hutchinson, 10 Mass., 225 ; Van Pelt v. Van Pelt, 2 Pennington (N. J.), 657 ; 2 Starkie on Evidence, 393.
But apart from this, we are of opinion that the court was *340 right in holding this witness competent to testify. Says Mr. Phillips in his work on Evidence:
“There is no precise age fixed at which children are excluded from giving evidence. At one time, indeed, their age was considered as the criterion of their competency; and it was a general rule that none could be admitted under the age of nine years, very few under ten; which, in some cases, would operate to deprive them of thé protection of law against acts of violence. A more reasonable rule has since been adopted; and the competency'of children is now regulated, not by their age, but by the degree of understanding which they appear to possess. In Brazier’s case,, on an indictment for assaulting an infant five years old with intent to ravish her, all the judges agreed that children of any age might be examined upon oath, if capable of distinguishing between good and evil, and possessing sufficient knowledge of the nature and consequences of an oath; but that they could not in any case be examined without oath. This is now the established rule as well in criminal as in civil cases; and it applies equally to capital offenses and to offenses of an inferior nature.'. . . According to this rule, the admissibility of children depends not merely upon their possessing a competent degree of understanding, but also, in part, upon their having such a degree of religious instruction as not to be ignorant of the nature of an oath, or of the consequences of falsehood.” Phill. on Evidence, Vol. x, Chap. 2, pp. 10, XI.
Accordingly, children, seven, six and even five years of age have been permitted to testify. 1 Const. Rep., S. C., 354. And the criterion of admissibility now is that the child should be of sufficient intelligence to have a just appreciation of the difference between right and wrong, and a proper consciousness of the punishment of false swearing. Commonw. v. Hutchinson, 10 Mass., 225 ; State v. Scanlan, 58 Mo., 204; Blackwell v. State, 11 Ind., 196; 1 Russell on Crimes, p. 565; White’s Case, 1 Leach, 430.
That the child witness in the present case came up to this *341 standard we are satisfied. While she stated in terms that she did not understand the nature of an oath, as possibly many an adult might do if required to define the nature of the crime of perjury, it is clear to us that she understood the difference between right and wrong, and the danger of false swearing, and that she was of sufficient intelligence to appreciate the conditions in which she was placed. Courts of justice should regard substance, not words. A child that has an adequate sense of the impropriety of falsehood does understand the nature of an oath in the proper sense of the term, even though she may not know the meaning of the word oath, and may never have heard that word used.
We are of opinion, therefore, that this witness was properly permitted to testify.
2. A. more serious question, however, in view of the authorities, is presented by the apparent variance between the name of this witness, Delia Berry, as stated in the indictment, and her name Dellie Berry, as proved by herself and her mother on the trial. It is claimed that this is a fatal variance.
In the days when a brutal penal code disgraced the civilization of England, courts of justice were often astute to escape its severity by insistence upon a rigid accord between the allegations and the proof in criminal cases; and the books are full of instances in which accused parties have been discharged upon the most apparently trivial technicalities. In those days, also, the science of pleading in civil causes was an exact science, and an exercise of skillful and subtle legal gymnastics, in which the most adroit pleader had the best chance of success. It may be that there was some advantage in the great exactitude then required; but statutes of jeofails, allowing a great latitude of amendment and a growing disposition on the part of the courts to restrict the scope of technical objection, have given opportunity in modern times for a greater subordination of technical science to the interests of substantial justice. Consequently, the application of the doctrine of variance has been *342 greatly restricted in our modern practice; and while it is still the rule, and must necessarily forever remain the rule, that the proofs upon the trial must conform to the allegations in the pleadings, yet it is true that time and place and circumstances are now, in general, not material; and that only material and substantial variances between the pleadings and the proofs will be regarded.
It has been supposed, however, and with justice, that no such relaxation of the ancient rule is applicable to criminal proceedings. On the theory of construing everything, as far as possible in favor of life and liberty, it is assumed that the allegations of a criminal indictment must still be rigidly proved as they are laid, with all the particularity and exactness with which an indictment is required to be framed, and mat otherwise the accused must be acquitted. This theory is no longer accepted as correct to the extent claimed for it; and it is no longer the rule even of the criminal law that time, place and circumstances must always be proved as they are stated in the indictment. A crime alleged to have been committed on one day and at a certain place may be shown to have been committed on a different day and at a different place. A homicide alleged to have been committed with, one weapon may be shown to have been committed with a different weapon. Illustrations might be multiplied indefinitely» The doctrine of variance is no longer allowed to defeat the ends of justice in such cases. And yet in criminal and in civil cases alike there is undoubtedly a limit upon the latitude that is allowed in this regard. In criminal cases, the right of amendment is exceedingly circumscribed; and there still the doctrine of variance has abundant scope for its application. But even in those cases it is no longer permitted to be applied to the unreasonable extent that was used in former times.
It has long been the law that there is no legal variance between different names that are the same in sound. And it is also the law that indictments, wherein are used the nicknames, pet names or abbreviations b.y which parties are *343 known, may not be defeated by the proof of baptismal names that differ from them. And the converse of this also .is true. The name of a person is the designation by which he is known; and that may be either the so-called Christian or baptismal name, or it may be any other equivalent appellation by which the party is known or recognized in the •community, or any ordinarily recognized or usual modification of such name. That Ellen and Nellie may be taken as the same, Amelia and Amelie, Rosalia and Rosalie, Anna and Annie, Margaret and Maggie, Catharine and Kate, we have the experience of everyday life; and it would be an insult to our common sense and a disgrace to our criminal jurisprudence.to hold that allegation of the one may not be sufficiently justified by proof of the other.
Counsel for the appellants in this case has entered into an ingenious and learned argument to show that Delia and Dellie are names of radically different linguistic origin; and he may be entirely correct in that argument. But names •derived from different linguistic sources may well be confounded and identified in popular use; and we can well see kow the names Delia, Delie, Dellie and Dellia may be used indiscriminately to designate the same person. The same name may be pronounced differently at different times by the same or by different persons. What the law and reason require is not identity of sound, but identity of the person— the substance, and not the shadow.
Our conclusion in this regard, we must admit, is antagonistic to the action of the Supreme Court of the State of Indiana, in the case of Vance v. State, 65 Ind., 460, which held that there was a fatal variance between the name of Dellia, used in the indictment, and the name of Della proved on the trial. With all due respect to that distinguished tribunal we fail to find any support for such a decision in the common sense of mankind. We think the doctrine has been more reasonably stated by the United States Circuit Court in the New York Circuit, in the case of the United States v. Mason, 12 Blatchford, 497, in which it was said by Mr. Justice Benedict:
*344 “ Variances which' may be fairly considered to be merely literal, which do not make a word different in sense or grammar, which leave the sound and sense in substance the same, are not considered material variances within the rule. The (old) rulé of late has been much relaxed. May v. State, 14 Ohio, 466 ; United States v. Hinman, 1 Baldw., 293.”
To the same effect is the opinion of Mr. Justice Story, in the case of the United States v. Howard, 3 Sumner, 18, in which he says: “A variance between the indictment and the evidence is not material, provided the substance of the matter be found.”
It may be remarked here that the offense charged against the appellants is the larceny by them of thé property of Caroline R. Berry, and not the property of Delia Berry or Dellie Berry; that it is the name of the former, and not that of the latter, which is material and substantial; and that the name of the child is important only in so far as it is necessary to show that the larceny was from the person of some one, and therefore punishable under the statute that has been cited.
The requirement of law, that the allegations and proofs in a cause should be conformable each to the other, and that there should be no variance between them, is intended to subserve two purposes: 1st. That a defendant should be distinctly and specifically advised of the charges against him, so as to enable him properly to make his defense, and that he should'not be taken by surprise in the testimony at the trial; 2d. That the judgment in the case might be pleaded with effect in any subsequent suit for the same offense or the same specific cause of action. Can any one suppose for a moment that the alleged variance in the name of the child in this case operated as a surprise upon the defendants? And can any one doubt for a moment that the judgment here rendered against the defendants would be pleadable in bar of any further prosecution for the same offense?
It is our opinion that there was no material variance in this case, and that the exceptions taken in that regard are not well founded.
*345 3. There remains one other question to be noticed— whether the offense here shown to have been committed constituted the statutory crime of larceny. It is argued that the taking in this case is shown to have been by force, and that larceny is a secret and fraudulent taking.
It is not apparent how it is to benefit the appellants that they should be proved to have committed the more atrocious crime of highway robbery rather than the more venial one of larceny. But apart from this, the position here taken for the appellants is untenable in law. The crime mentioned in the statute hereinbefore cited, for which these appellants were convicted, is “ larceny from the person ”; and “ larceny from the person,” according to Blackstone (Book IV, Ch. 17), “ is either by privately stealing, or by open and violent assault-which is usually called robbery.” So that “larceny from the person ” includes both secret and fraudulent stealing, and robbery by open violence. Another definition, and that which has generally been accepted as the best, is that which is given in 2 East’s Pleas of the Crown, 553, as follows: “ The wrongful and fraudulent taking and carrying away by one person of the mere personal goods of another from any place, with a felonious intent to convert them to his, the taker’s, use and make them his property without the consent of the owner.” As will be seen, the offense consists in “ a wrongful and fraudulent takingand it does not exclude the idea of force and violence, or of fraud accompanied by force, nor does it imply that the taking must be secret. Even if we were to assume that the taking must be secret in order to constitute the crime of larceny, the taking in this case was in fact secret, so far as Caroline R. Berry, the owner of the property, was concerned.
But we do not regard this point as of sufficient importance to require extended consideration from us; and indeed we do not understand that it is very seriously urged by counsel for the appellants. At all events, we do not regard the exception in this regard as well taken; and we think the court below was right in overruling the motion made on be- *346 balf of. the appellants, to instruct the jury to find a verdict for the appellants, in case they found from the evidence that there was violence in the taking.
Upon the whole record, we find no error in the ruling of the court below ; and the judgment of that court must therefore be affirmed.