BAILEY *et al. v.* THE STATE.

The testimony in this case being entirely circumstantial, and the facts proved
　being consistent with the innocence of the defendants, and failing to con-
　nect them with the perpetration of the crime charged, the verdict was
　contrary to evidence; and the court therefore erred in overruling the
　motion for a new trial.

Submitted May 2, — Decided May 25, 1898.

Indictment for murder. Before Judge Spence. Calhoun
superior court. December term, 1897.

*J. H. Guerry* and *J. J. Beck,* for plaintiff in error.

*J. M. Terrell, attorney-general,* and *W. E. Wooten, solicitor-
general,* contra.

LEWIS, J. Ingram, Bailey and Handy were indicted in Cal-
houn superior court for the murder of King, and were put upon
trial under a plea of not guilty. The record discloses substan-
tially the following state of facts revealed by the testimony in-
troduced in behalf of the State: King was the general agent of
the owner of the land upon which he was living, having under
his superintendence the farm. Ingram, also a white man, was
living on the same place as an employee of the owner, and
Bailey and Handy were negro laborers or renters upon the same
land. In the early part of the night of October 31, 1897, King
received a pistol-shot wound, in the horse-lot on the farm, from

which he died in a few minutes.    Ingram was the first person
who reached him after he was shot; and he simply stated to
Ingram that he was shot in the stomach, and died directly
afterwards.    In response to an alarm given by Ingram a few
minutes after the pistol-shot was fired, the other employees
of the place began to assemble.    Ingram was found in his
night clothes at the body of the deceased with a pistol in his
hand, one barrel of which had been discharged, and which
he handed to a bystander to keep for him temporarily.    This
pistol belonged to Ingram.    Bailey was also summoned to the
place where the body of the deceased lay.    He lived some dis-
tance away, and at the time he was called, appeared to be
asleep in his bed.    He dressed and went to the lot, he and
Handy standing a little off from the balance of the crowd.
There was some testimony of a difficulty between Ingram and
King a short time previous to the homicide, and Ingram after
this difficulty made some threat relating to the use of his knife
or his pistol on King.    There was also evidence of a difficulty
between Bailey on the one hand and King and Ingram on the
other, which occurred at the home of Bailey.    Afterwards Bailey
made some threats against King on account of this difficulty,
and on Saturday night previous to the homicide, which oc-
curred the following Sunday night, one witness testified that
Bailey tried to get him to go to the house of King and call him
out for the purpose of killing him.    Handy was near by at the
time this conversation occurred, but there was no evidence that
he heard or engaged in it.    When the coroner's inquest was
held, Bailey, with other employees on the place, were sum-
moned to attend the trial.    He appeared at the trial and left
before the same was finished; and there was some testimony
tending to show that he was endeavoring to make his escape
when he was resummoned to appear, and again appeared at the
trial.    He gave different reasons as to why he left, and among
them was, that the brothers or other relatives of the deceased
were present at the inquest, armed with pistols, and he was
afraid his life was in danger.    On the day of the homicide,
King borrowed a pistol from some of his family, and went home
with it that evening with every chamber loaded.    This pistol

two or three days after the killing was found in the same lot several feet from where the body of the deceased lay, with one barrel discharged, the pistol evidently having the appearance, when found, of being exposed to the weather for two or three days.   The ball that was taken from the body of the deceased fitted exactly King's pistol, but did not fit with the same exactness the pistol owned by Ingram, although the two pistols were of the same calibre.   The ball was tried in other weapons, and was not found to fit any but King's pistol.   The defendants introduced no testimony.   There is quite a volume of evidence in the record, but the above are all the material and substantial facts that relate to the guilt or innocence of those accused.   The jury returned a verdict of not guilty as to Ingram, and guilty as to Bailey and Handy, with recommendation to life imprisonment; whereupon the defendants found guilty moved for a new trial, upon the grounds that the verdict was contrary to law and evidence, and the charge of the court.   To the judgment of the court overruling the motion they except.

From a careful and thorough research into the record of this case we fail to find any testimony whatever that would authorize even a reasonable ground of suspicion against the defendant Handy.   The only evidence against the other defendant that would authorize such a suspicion is that which relates to a threat, and a proposition he made to another to assassinate the deceased.   Doubtless he saw that he was suspected at the inquest, and seeing the relatives of the deceased armed, in a moment of such excitement, it is not strange and is entirely consistent with the theory of his innocence that he should have endeavored to escape from such an atmosphere of danger.   There is no testimony in the case that tends to connect him, or any one else as to that matter, with the perpetration of the crime charged.   The evidence, to say the least of it, points with as much force to the conclusion that the death of deceased was the result of an accidental shooting of his own pistol as it does to the theory that he was assassinated.   Mere threats to take the life of another, not coupled with any other evidence connecting the party with the perpetration of the deed he threatened to commit, are not sufficient to base a verdict of guilty on, espe-

cially in a case where the corpus delicti has not been satisfactorily proved.　We therefore conclude that the verdict in this case was contrary to the evidence, without evidence to support, it and that the court erred in overruling the motion for a new trial.　*Judgment reversed.　All the Justices concurring.*