## YOUNG *v.* THE STATE.

The evidence relied upon for conviction was entirely circumstantial, and was not sufficient to exclude every reasonable hypothesis save that of the guilt of the accused. The verdict was therefore contrary to law.

Argued November 21, — Decided December 9, 1904.

Indictment for murder. Before Judge Lewis. Baldwin superior court. September 26, 1904.

*John R. Cooper* and *Hines & Vinson*, for plaintiff in error.
*John C. Hart, attorney-general*, and *Joseph E. Pottle, solicitor-general*, contra.

SIMMONS, C. J. Albert Young was convicted of the offense of murder. The evidence relied upon to sustain the conviction was entirely circumstantial. It was shown that Young and a woman named Lily Anderson had, some three years before the homicide, sustained criminally intimate relations with each other, when the woman became tired of him and "took up with" one Gus King, with whom she sustained similar relations. Young appeared dissatisfied with this conduct on the part of the woman, and on several occasions followed her about with a gun. On two occasions he was heard to make quasi-threats against King. One of these was that if he went to kill King, he was going to kill him and not play with him. The other was that if King had gone off, he "had better have stayed off." These threats were made a few

days before the homicide. King was killed in a public road by shot evidently fired from a shotgun. Tracks were found on a private road which branched off from the road in which King was killed. According to one of the witnesses, these tracks resembled Young's tracks. There was no evidence to show when the tracks were made; they were discovered the morning after the killing. The private road was regularly used by a number of people in the neighborhood, among them the accused. There was a clump of bushes near the side of the public road, behind which a man could have hidden and within gunshot of the place where King's body was found. The tracks alleged to have been Young's were not, however, shown to have led to these bushes. A piece of paper was found near the body of the deceased in the road, but the evidence does not disclose whether or not it appeared to have been discharged from a gun or to have been used as a gun-wad. It also appeared that one barrel of Young's gun had been recently discharged, and that one of the witnesses pulled a wad from the other barrel. These are all the material facts appearing in the record to sustain the conviction. The motive claimed to have been proved was Young's jealousy and anger that the deceased had "taken up with" the woman in the case, who had three years before the homicide been intimate with the accused. The accused, the deceased, and the woman appear to have lived in the same neighborhood,—as far as appears, upon the same plantation. The woman had left Young three years before, and in the mean time there had been abundant opportunity for Young to have killed King, if this was the motive which actuated the crime. The tracks were not shown to have been recently made. There had been no rain just before the homicide, and the tracks may have been made before the death of King. Whether they were Young's tracks at all was merely the opinion of one of the witnesses. The tracks had not been measured or compared with the shoes worn by Young at the time. The opinion of a witness as to the tracks of any particular individual adds little to a case, unless there is something more. So many men wear the same sort of shoe and walk in the same manner that it is hardly possible to identify tracks positively. In the present case the witness swore to the tracks because of peculiarities in Young's shoe and in his way of walking, but others may have had the same

peculiarities.   Conceding, however, that these were Young's tracks, the evidence did not show that the tracks led to the public road and to the point where the body of the deceased was found. The solicitor-general argued in his brief that the tracks led to the clump of bushes near the dead body, there stopped, and then returned.   This does not appear in the record.   The only witness who testified as to the tracks testified that he saw Young's tracks where he had passed along the private road, going toward the public road, and had returned.   It also appeared that this private road was generally used by Young in going to or from his house. The solicitor-general also argued that the paper found near the dead man was the wad of the gun with which deceased had been killed, and was similar to the wad drawn from the undischarged barrel of Young's gun.   The record does not bear out this contention.   The coroner, who was introduced as a witness, testified: " There was a paper handed me by some one near the body in the road, and I pulled a wad out of the other barrel of the gun and have it here."   There was no other evidence as to the wadding. There was no evidence that the wad taken from Young's gun was of paper, or that, if so, it resembled in any way the paper found in the road.   We can not tell either that the wad taken from the gun was of paper, or that the paper found in the road appeared to have been used as a gun-wad.   Neither the paper nor the wad appears to have been put in evidence.   The truth is the evidence does not indicate whether the paper found in the road had ever been in a gun at all, but merely shows that a piece of paper was handed to the coroner by some one near the body of the deceased. There was no evidence, either, as to the size or character of the shot in the gun of the accused or of the shot with which deceased had been killed.

For the reasons above indicated we think the conviction of the accused ought not to stand.   The evidence was clearly insufficient to exclude every other reasonable hypothesis save that of the guilt of the accused.   *Judgment reversed.   All the Justices concur.*