19692. JUNE *v.* THE STATE.

SUBMITTED MAY 13, 1957—DECIDED JUNE 11, 1957.

*H. M. Hodges,* for plaintiff in error.

*B. D. Dubberly, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

HEAD, Justice. 1. In the only special ground of the motion

for new trial it is contended, that the evidence of the witness Jerome Keller, that in October, 1953, he saw the defendant menacing the deceased with a pistol, was improperly admitted over the objections that: the evidence showed a separate offense and put the defendant's character in issue; the State had failed to prove that the defendant had committed any crime under the indictment; and the witness was testifying to "something four or five years ago." The trial judge allowed the evidence with the following statement: "I will admit it with the right to exclude it if he doesn't connect it up properly."

Evidence showing bad feeling between the defendant and the deceased is ordinarily admissible in a homicide trial, even though the evidence relates to an incident which occurred several years before the homicide. *Shaw* v. *State*, 60 *Ga.* 246; *Shafer* v. *State*, 191 *Ga.* 722 (13 S. E. 2d 798); *Vun Cannon* v. *State*, 208 *Ga.* 608, 612 (68 S. E. 2d 586). It does not appear that there was any renewal of the objection to the evidence, and there is no merit in this ground.

2. The substantial issue in this case is whether or not the evidence against the defendant, which was entirely circumstantial, excluded every other reasonable hypothesis except that of his guilt. There was testimony by numerous witnesses of threats and menaces by the defendant against the deceased, but there is no direct evidence that the defendant ever carried out these threats. It appeared from the State's evidence that the deceased died from loss of blood from a stab wound in a jugular vein, and the wife of the deceased admitted in the presence of numerous witnesses that she inflicted this wound.

The defendant and the deceased were brothers-in-law, the defendant having married the sister of the deceased. It was the theory of the State that the wife of the deceased, Rachel Walthour, and the defendant conspired together to kill the deceased, and that the wife of the deceased admitted the killing to protect the defendant. There is no evidence in the record to show a conspiracy between the defendant and Rachel Walthour to commit the homicide with which the defendant is charged. The only evidence which might give a suspicion of such a conspiracy is that of Rosa Walthour, who testified that after the deceased had

been cut, and Rachel Walthour was bathing his face, the defendant came up and said, "me and you will kill the [vile name] if he ain't dead yet." It plainly appears, however, from the testimony of this witness, that the fatal wound had been given before the defendant came to the scene and made the statement attributed to him, which statement was followed, according to the witness, by a statement that he would get a doctor.

Moses Walthour, a son of the deceased, stated that on the morning after the homicide he examined a field back of his father's house, that there was a place in this field where the ground looked like somebody had scuffled there, and that in another part of the field he saw some tracks which he identified as those of the defendant. He stated that there were lots of tracks out there in the field, and that he recognized the tracks of the deceased in the field. He also saw some blood "further off from there. In the edge of the yard . . . just a little drop of it." The defendant's home was a short distance from the home of the deceased. There was no proof that the homicide occurred in this field. Even if the testimony of this witness should be considered as sufficient to show a proper identification of the tracks of the defendant, this evidence was insufficient to link the defendant with the homicide.

While it appeared that the statements made to various witnesses by Rachel Walthour as to the details of the stabbing were not entirely consistent with some of the physical evidence, this would not show that the defendant was the perpetrator of the homicide.

The mass of evidence showing ill-will by the defendant toward the deceased certainly indicates that he may have desired to kill the deceased. The evidence wholly failed, however, to prove that he participated in the crime with which he was charged. The trial judge erred in refusing to grant a new trial on the general grounds. *Bailey* v. *State,* 104 *Ga.* 530 (30 S. E. 817); *Young* v. *State,* 121 *Ga.* 334 (49 S. E. 256); *Park* v. *State,* 123 *Ga.* 164 (51 S. E. 317); *Redwine* v. *State,* 207 *Ga.* 318 (61 S. E. 2d 481).

*Judgment reversed. All the Justices concur.*