UNITED STATES of America,
Plaintiff-Appellee,

v.

Hoyle Lamont PEACOCK, Vera Lee Peacock and Harvey Coleman Peacock,
Defendants-Appellants.

Nos. 79–5238, 80–7087.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1981.

Thomas M. Flournoy, Jr., Columbus, Ga., for Hoyle and Vera Peacock.

John C. Swearingen, Jr., Columbus, Ga. (Court-appointed), for Harvey Peacock.

Edgar W. Ennis, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before RONEY, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

A jury found beyond a reasonable doubt that Harvey, Hoyle, and Vera Peacock were members of a criminal enterprise that engaged in arson, murder, mail fraud, and obstruction of justice in order to defraud certain insurance companies. The twenty-four count indictment charged the Peacocks with racketeering, 18 U.S.C. § 1962(c) [Count 1], mail fraud, 18 U.S.C. § 1341 [Counts 2–23], and obstruction of justice, 18 U.S.C. § 1510 [Count 24].

Harvey Peacock was found guilty on all twenty-four counts, sentenced to 55 years imprisonment, and fined $16,000. Hoyle was found guilty on Counts 1 and 7–23. He was sentenced to 35 years imprisonment and fined $13,000. Vera was found guilty on Counts 1, 2 and 7–13. She was sentenced to 25 years imprisonment and fined $5,000. The same jury returned special verdicts against each of the defendants requiring them to forfeit $257,055 worth of insurance proceeds that they acquired through their pattern of arson and murder. 18 U.S.C. § 1963(a). The district court's order and judgment of forfeiture was issued as a general money judgment against the defendants.

The defendants raise numerous points on appeal. Essentially, their arguments focus on three points. First, appellants assert the evidence is insufficient to convict them on various counts. Second, appellants contend that both the Confrontation Clause of the Sixth Amendment and the rule against hearsay were violated by the admission of "testimony" from deceased declarants. Third, appellants argue that the forfeiture provisions of the Racketeer Influenced and Corrupt Organizations statute (RICO), 18 U.S.C. § 1963, are not applicable to the insurance proceeds which they acquired. Further, they urge that even if applicable, RICO does not authorize the district court to issue a general money judgment.

With three exceptions, we affirm the jury's verdict. First, the evidence is insufficient to convict Vera Peacock of the arson at 3008 Third Ave. in Columbus, Georgia. Second, the evidence is insufficient to convict Harvey and Hoyle for the murder of Ruth Elaine Peacock. Accordingly, the mail frauds based on the murder, counts 16–23, are reversed. Third, as we are bound by *United States v. Martino*, 648 F.2d 367 (5th Cir. 1981) we must reverse the district court's forfeiture order. In all other respects, we affirm the jury's verdict.

### I. *The Peacocks' Scheme*

Our presentation of the evidence will follow the structure of the indictment.

### A. *Count 1: The Racketeering Enterprise*

Count 1 charges a violation of 18 U.S.C. § 1962(c). To obtain a conviction under

§ 1962(c) it must be shown that the defendants conducted the affairs of an enterprise through a pattern of racketeering activity. A pattern of racketeering activity is defined by statute as at least two acts of racketeering activity which occur within ten years of each other. 18 U.S.C. § 1961(5). Racketeering activity is defined as any of a large number of both state and federal crimes which are listed in § 1961(1).

Here, the racketeering enterprise was, in essence, an arson ring. It was comprised of thirteen individuals associated in fact for the purpose of defrauding certain insurance companies. In its pursuit of profit this enterprise allegedly engaged in a pattern of racketeering activity which included ten arsons, one murder, 22 mail frauds, and an obstruction of justice which involved two additional murders. As will be seen, the enterprise's "business methods" reflected a sophisticated level of activity not unlike an efficiently run small business.

### 1. *The Arsons*

Section 3(a) of Count 1 charged that on September 12, 1971 Harvey, Hoyle, and Vera Peacock, aided and abetted by one another, and by Ray Peacock, a now-deceased son of Harvey and Vera, burned a house located at 3008 Third Avenue in Columbus, Georgia with intent to defraud the State Automobile Insurance Company. Ga. Code § 26–1504. The city of Columbus fire marshal testified that the cause of the fire was "electrical"; "a penny behind the fuse." On February 19, 1979 Hoyle acquired fire coverage on this house for $8,000. This amount was subsequently paid to both Hoyle and Vera, who held a mortgage on the house. At the time of the fire, Ray Peacock and his wife occupied 3008 Third Avenue. Hoyle subsequently admitted to one Ruth Rhodes that he and his father, Harvey, were responsible for this arson.

In what was to become a well-established alibi pattern, George Cumbie, a named but unindicted member of the criminal enterprise, Hoyle and Ray Peacock and their three wives were on a vacation trip in Panama City, Florida at the time of the fire. Both Harvey and Vera testified that they were babysitting for their granddaughter at the time of the fire.

Neither Harvey nor Hoyle challenge the sufficiency of the evidence to convict them for this arson.

Section 3(b) of Count 1 charged that on June 1, 1972 Harvey, Hoyle, and Vera Peacock burned a house located at 2913 Bradley Circle with intent to defraud the Utica Fire Insurance Company. Harvey and Vera had $25,500 of insurance coverage; $15,500 on the house and $10,000 on the unscheduled personal property. Harvey and Vera were subsequently paid $27,341.81 for their loss. One of Harvey's coconspirators, Butch LeJune, later told another of Harvey's coconspirators, Richard Crane, that Crane should have handled "his fire" like Harvey handled the one at Bradley Circle.

The testimony of the city fire marshal established that the apparent cause of fire was defective wiring. This conclusion was based on the discovery that the main panel had only two thirty amp breakers for a seven room house. Other evidence revealed that George Cumbie, the next door neighbor, found Harvey's sons, Ray and Hoyle, "cleaning" the walls with linseed oil the afternoon before the fire. Harvey and Vera were on a vacation trip to the far West and Mexico at the time of the fire.

Neither Harvey nor Hoyle challenge the sufficiency of the evidence to convict them for this arson.

Section 3(c) of Count 1 charged that on January 21, 1973 Harvey and one Sonny Marion Hobbs, aided and abetted by each other and by Ray Peacock and one Mickey Jerome Miller burned a house at 515 Twenty-second Avenue in Phenix City, Alabama with intent to defraud the State Farm Fire and Casualty Company. Ala.Code § 13–2–20. Hobbs was in the process of buying this home, in which he lived, from Harvey Peacock at the time of the fire. Hobbs worked for Harvey as a truck driver.

Hobbs had acquired $13,000 of coverage on the house itself, and $6,500 on its contents. He collected two checks; one made

payable to him for $6,780 and one made payable to both him and Ray Peacock for $12,500. Hobbs and Ray Peacock endorsed both checks.

Mickey Jerome Miller, a named but unindicted participant, testified that Harvey Peacock hired him to burn the 515 Twenty-second Avenue house for $200. Miller later met with Harvey and Hobbs regarding his payment. Harvey was in Lakeland, Florida attending to his trucking business when the fire occurred.

Harvey does not challenge the sufficiency of the evidence to convict him for this arson.

Section 3(d) of Count 1 charged that Harvey Peacock and Sonny Hobbs, aided and abetted by each other, and by Ray Peacock, committed mail fraud in order to obtain the insurance proceeds described in section 3(c) of Count 1. 18 U.S.C. § 1341.

Harvey does not challenge the sufficiency of the evidence to convict him for this mail fraud.

Section 3(e) of Count 1 charged that on February 25, 1973 Harvey and Vera, aided and abetted by each other, and by Clarence Peacock and Mickey Miller burned a house at 3004 Fourth Ave. in Columbus, Georgia with intent to defraud the Interstate Fire Insurance Company. Clarence Peacock, Harvey's father, and Mary Nell Peacock, Harvey's stepmother, were the occupants of this home.

Clarence Peacock had $3,500 of coverage on the house itself, and $3,000 on its contents. Clarence Peacock received checks for his fire losses; one for $3,500 and one for $2,477.81.

The investigation report showed that the fire's apparent cause was the misuse of an electric blanket. However, Mary Nell Peacock testified that she heard her husband, Clarence, and Harvey discussing insurance on the house and that she "expected the house to be burned." She also testified that both Harvey and Vera told her to move clothes and other items out of the house before her trip to Florida. Clarence and Mary Nell Peacock were in Florida at the time of the fire.

Again, Mickey Miller testified that he was hired by Harvey to burn the house for $200. Miller further testified that he poured gas throughout the house before igniting it with a match. Once again, Harvey was on a trip for Watkins Motor Lines, his trucking business, when the fire occurred.

Harvey does not challenge the sufficiency of the evidence to convict him for this arson.

Section 3(f) of Count 1 charged that on December 13, 1973 Harvey, aided and abetted by one A.L. Gravitt, Jr. burned a house at Rural Route 1, Box 329A in Russell County, Alabama. This unfinished and unoccupied house belonged to Jack Hobbs. Harvey's motive for this arson was not money; it was revenge.

Gravitt testified that Harvey wanted to "burn out" Jack Hobbs because of a disagreement regarding payment for certain building materials Hobbs had allegedly acquired from Harvey. Gravitt further testified that he and Harvey thoroughly doused Hobbs' home with wood alcohol and burned it.

Harvey does not challenge the sufficiency of the evidence to convict him for this arson.

Section 3(g) of Count 1 charged that on December 30, 1973 Harvey and Vera, aided and abetted by each other, and by Mickey Jerome Miller, burned a house at Rural Route 3, Box 221, in Phenix City, Alabama with intent to defraud the Southern United Fire Insurance Company.

The fire insurance was originally taken out by Ray Peacock but was changed to Vera's name when she assumed ownership. Southern United Fire Insurance paid Vera $4,500 for her loss. The proof of loss statement indicated that the cause of the fire was unknown.

Once again, however, Mickey Miller explained the cause of the fire. He testified that Harvey hired him to burn the house at Rural Route 3 for $200.

Harvey does not challenge the sufficiency of the evidence to convict him for this arson.

Section 3(h) of Count 1 charged that on May 4, 1974 Harvey, aided and abetted by Joseph Allen ("Butch") LeJune burned a house at 3615 East Britt David Road in Columbus, Georgia with intent to defraud the Consolidated American Insurance Company. Joseph LeJune received insurance payments of $22,500 and $21,850.

After checking the house for possible accelerants and sending several samples to the lab, Lt. William Highsmith, an arson investigator, concluded that the cause of the fire was arson in the first degree. A.L. Gravitt, who also testified about the arson charged in 3(f), testified that he heard LeJune and Harvey discussing plans to burn the house. He also testified that LeJune went over the preparations for the fire with him.

Harvey does not challenge the sufficiency of the evidence to convict him for this arson.

Section 3(i) of Count 1 charged that on July 5, 1974 Harvey, Vera, Hoyle and Roger Therrien aided and abetted by each other and by George Cumbie burned a house at 2946 Grant Road in Columbus, Georgia with intent to defraud the Aetna Insurance Company. George Cumbie lived in the house, which was owned by either Vera or Hoyle, at the time of the fire. Aetna paid him $25,470 for his loss.

Cumbie testified that Harvey planned the arson. He testified that Harvey approached him about living in the house and instructed him to get insurance on the home and that a fire would take place while Cumbie was out of town. Cumbie was told he would receive a cut of the insurance proceeds and that Harvey would provide the money to pay the premiums. Cumbie also testified that Hoyle and Roger Therrien helped him move some appliances out of the house several days before the fire. Finally, the evidence showed that the insurance check was made out to both Cumbie and Hoyle and that they cashed the check together; each taking a portion of the proceeds. Harvey testified he was in Florida for a family reunion at the time of the fire.

Neither Harvey nor Hoyle challenge the sufficiency of the evidence to convict them of this arson.

Section 3(j) of Count 1 charged that on November 16, 1974 Harvey, Vera, Hoyle, and Roger Therrien, aided and abetted by each other and by Richard Crane, Jessie Crane and Joseph LeJune burned a house, at 701 Thirteenth Ave. in Phenix City, Alabama with intent to defraud the Employers Casualty Company. The house was owned and occupied by Richard and Jessie Crane. Richard Crane was an employee at A.L. Gravitt's Sheet Metal Shop.

The Cranes had a small fire at their house on November 5, 1973. Richard Crane was contacted by Harvey and A.L. Gravitt concerning the handling of his insurance claim. Crane testified that he, Gravitt, Harvey, Hoyle, and George Cumbie staged a burglary at Crane's residence in the early part of December 1973. The men loaded the furniture onto three trucks and transported it to a house owned by the Peacocks. Crane testified that after the burglary he received a settlement of approximately $20,000 from the Alabama Farm Bureau.

The Cranes subsequently moved to Fort Pierce, Florida. Before doing so, Richard Crane reinsured the property at 701 Thirteenth Ave. according to Harvey's plan to strip the house and burn it again. On November 16, 1974 Harvey's plan was executed.

The Cranes had considerable difficulty collecting compensation for the second fire loss. Ultimately, with the help of a lawyer, they received payments of $30,000 and $15,500 from the Employers Casualty Co. Crane testified that most of the money was turned over to Harvey because of Crane's indebtedness to him. Crane also testified that he had a conversation with LeJune in which LeJune said he should have handled the fire the way Harvey handled the Bradley Circle fire.

Neither Harvey, Vera, nor Hoyle challenge the sufficiency of the evidence to convict them for this arson.

Section 3(k) of Count 1 charged that on August 17, 1975 Harvey and Hoyle, aided and abetted by each other, burned a house at Rural Route 4, Box 174, White Rock Road in Russell County, Alabama with intent to defraud the Great Central Insurance Co. Hoyle Peacock, the named insured, had the following coverage: $20,000 on the house, $2,000 on the pertinent structures; $10,000 on the unscheduled personal property, and $4,000 on additional living expenses.

The most damaging evidence of this arson came from Ruth Rhodes, Hoyle's stepmother. She testified that Hoyle admitted burning his house on White Rock Road. Mrs. Rhodes further stated that Hoyle attempted to persuade her to burn her home during the same conversation. She testified that he said, "We have this crew that really knows what they're doing. Daddy [Harvey] and me and Butch [LeJune]."

Neither Harvey nor Hoyle challenge the sufficiency of the evidence to convict them of this arson.

### 2. *The Murder of Ruth Elaine Peacock*

Section 3(*l*) of Count 1 charged that on November 27, 1975 Harvey and Hoyle, aided and abetted by each other and by Joseph Allen LeJune murdered Ruth Elaine Peacock. Ga.Code § 26–1101(a).

The victim's body was found by a deer-hunter early Thanksgiving morning lying next to Highway 39 in Quitman County, Georgia. Death was caused by multiple gunshot wounds to the head. Her body was laced with lacerations and bruises indicating that she had been badly beaten before death.

The evidence against Harvey and Hoyle was entirely circumstantial. George Cumbie testified that Harvey had said he hoped to choke Elaine to death. On another occasion, Cumbie heard Harvey and Ray Peacock plot Elaine's "accidental" drowning in Lake Oliver.

In addition, Hoyle's motives to kill Elaine were well developed. They had severe marital problems. While hitchhiking, Elaine had picked up a man, Larry Ford, and had sex with him. At the time of her death,

Ford was living with Elaine in the same house with Hoyle. Furthermore, Hoyle had taken out large amounts of life insurance on Elaine's life for the benefit of their young daughter, Brandy.

The evidence further shows that on Thanksgiving eve Harvey came into James Whatley's business and asked to borrow Whatley's El Camino truck. Joseph LeJune walked in several minutes later. Whatley testified that Harvey asked LeJune if he had any plans that night. After LeJune responded no, Harvey instructed him "to stay close to the phone." Whatley further testified that Harvey called him at approximately 4:30 a. m. the next morning and told him that his truck was parked at his shop. Documentary evidence placed Hoyle in Florida at the time of his wife's death.

Mary Nell Peacock, Harvey's stepmother, testified that sometime after Elaine's funeral, Harvey told her that he knew who killed Elaine. He also said that he was the only one who knew and that it was going to stay that way.

Both Harvey and Hoyle vigorously challenge the sufficiency of the evidence to convict them of this murder.

### 3. *Other Acts of Racketeering*

Count 1 also charged that mail frauds charged in Counts 2–23 and the obstruction of justice charged in Count 24 were part of the appellants' pattern of racketeering.

Section 4 of Count 1 charged that the proceeds which the appellants acquired through their pattern of racketeering, at least $391,849.46, is subject to forfeiture. 18 U.S.C. § 1963.

### B. *Counts 2–23: The Mail Frauds*

The mail frauds charged by the indictment all involve the appellants' allegedly fraudulent attempts to obtain insurance proceeds from the previously described arsons and murder.

Count 2 charged that Harvey and Vera furthered a scheme fraudulently to obtain insurance proceeds through a mailing regarding the arson at Rural Route 3, Box 221 in Phenix City. (Count 1, 3(g)).

Harvey does not challenge the sufficiency of the evidence to convict him of this mail fraud.

Counts 3–6 charged that Harvey furthered a scheme fraudulently to obtain insurance proceeds through mailings regarding the arson at 3615 East Britt David Road in Columbus, Georgia (Count 1, 3(h)).

Harvey does not challenge the sufficiency of the evidence to convict him of these mail frauds.

Count 7 charged that Harvey, Vera, Hoyle and Roger Therrien furthered a scheme fraudulently to obtain insurance proceeds through a mailing regarding the arson at 2946 Grant Road in Columbus, Georgia. (Count 1, 3(i)).

Neither Harvey nor Hoyle challenge the sufficiency of the evidence to convict them for this mail fraud.

Counts 8–13 charged that Harvey, Hoyle, Vera, and Roger Therrien furthered a scheme fraudulently to obtain insurance proceeds through mailings in connection with the arson at 701 13th Ave. in Phenix City, Alabama. (Count 1, 3(j)).

Neither Harvey, Vera, nor Hoyle challenge the sufficiency of the evidence to convict them for these mail frauds.

Counts 14 and 15 charged that Harvey and Hoyle furthered a scheme fraudulently to obtain insurance proceeds through mailings in connection with the arson at Rural Route 4, Box 174, White Rock Road in Russell County, Alabama (Count 1, 3(k)).

Neither Harvey nor Hoyle challenge the sufficiency of the evidence to convict them of these mail frauds.

Counts 16–23 charged that Harvey and Hoyle furthered a scheme fraudulently to obtain insurance proceeds through mailings in connection with the death of Ruth Elaine Peacock. (Count 1, 3(*l*)).

#### C. Obstruction of Justice

Count 24 charged that Harvey attempted to obstruct the investigation of the aforementioned crimes by killing Joseph Allen "Butch" LeJune and Darrell Lavon Brookins to prevent them from talking to the FBI.

On the morning of July 3, 1978 both LeJune and Brookins went to meet Harvey at a home belonging to a friend of Harvey's in Stockbridge, Georgia. That same morning Harvey called the Henry County Police Department to report a shooting. Both men had been shotgunned to death. At trial, Harvey asserted that he killed both men in self-defense.

Harvey does not challenge the sufficiency of the evidence to convict him for obstruction of justice. He does, however, strenuously challenge the admission of several hearsay statements which relate to this Count.

### III. Challenges to the Sufficiency of the Evidence

#### A. Vera

Vera challenges the sufficiency of the evidence to convict her for the arsons described in subparagraphs 3(a), (b), (e), (g) and (i) of Count 1 and the related mail frauds in Counts 2 and 7–13. On appeal, our role is sharply limited to determining whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendant's guilt under the evidence. *United States v. Slone*, 601 F.2d 800, 802 (5th Cir. 1979). In conducting this inquiry we must consider the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), resolving reasonable inferences and credibility choices in support of the jury's verdict. *United States v. Henderson*, 588 F.2d 157, 161 (5th Cir. 1979).

The evidence shows that Vera was an integral part of the racketeering pattern. Most often she was cast as an aider and abetter tending to financial matters.

We begin by noting that Vera concedes the evidence was sufficient to convict her of burning the home at 701 13th Ave., Phenix City, Alabama (Count 1, 3(j)). There, the evidence revealed that she assisted Harvey and other members of her family in clearing the house of valuables before it burned. She also told Jessie Crane that she knew

the house was to be burned and she received much of the furniture taken from the house before the fire. Finally, she traveled with Harvey to the Cranes' house in Florida immediately after the fire and was present while he described the details of the fire.

The evidence regarding the fire at 2946 Grant Road (Count 1, 3(i)) centers on George Cumbie's testimony. He testified that Harvey approached him about burning his house to obtain insurance proceeds. He further testified that following the fire, he was assisted by Harvey and Vera in completing his insurance claim. That Harvey and Vera were not novices in the business of arson was shown when they told Cumbie and his wife that they had a pre-existing list that the Cumbies could use in preparing their insurance forms. Finally, Cumbie testified that he actually received this list from Vera. Count VII charged Vera and others with mail fraud in connection with this arson. Vera's only challenge to the mail fraud is the sufficiency of evidence to convict her for the underlying arson. We find the evidence sufficient to convict her for this arson; hence, we affirm her conviction for mail fraud.

The evidence regarding the fire at Rural Route 3, Box 221, Phenix City, Alabama (Count 1, 3(e)) showed that Vera once again played a central role in the financial end of the Peacocks' operation. First, she accepted the property at Rural Route 3 as a gift from Harvey who paid Mickey Miller $200 to burn it. Vera vigorously pursued the insurance settlement and ultimately received $4,500 from the Southern United Fire Insurance Company. Count II charged Vera with mail fraud in connection with this arson. Again, as her only challenge to the mail fraud is the sufficiency of the evidence regarding the underlying arson, we affirm her mail fraud conviction.

The evidence regarding the fire at 3004 4th Ave. (Count 1, 3(e)) shows that Harvey paid Mickey Miller $200 to burn the house of Clarence and Mary Nell Peacock. Once again a familiar pattern emerges. Mary Nell testified that before the fire she was approached by Vera. In order to maximize the "profit" from the arson, Vera told Mary Nell, per Harvey's instructions, "to take the clothes and stuff" out of the house prior to its planned destruction.

After the fire Vera again played an active role in the settlement of the insurance proceeds. She was present and offered assistance when the insurance adjuster came. In addition, she accompanied Mary Nell to the offices of the Interstate Insurance Company.

The evidence regarding the fire at 2913 Bradley Circle (Count 1, 3(b)), showed that Harvey and Vera lived in this dwelling, were the named insureds, and that they received $27,341.81 from Utica Fire Insurance Co. after the arson. As is the case in all the arsons, Harvey does not challenge the sufficiency of the evidence to convict him. The most significant evidence connecting Vera to the arson comes from Mary Nell Peacock. Vera told Mary Nell that furniture in the Peacock's present home at 3011 Fourth Ave. came from the destroyed house on Bradley Circle. This, of course, indicated that Vera had been part of the typical Peacock *modus operandi*: the house on Bradley Circle had been stripped of its valuables before it was burned.

Vera's participation in this pattern of racketeering must also be reviewed in light of the "clear rule that . . . prior or subsequent [crimes] may be introduced to establish . . . that there is a consistent pattern, scheme of operations, or similarity of method." *United States v. Goodwin*, 470 F.2d 893, 899 (5th Cir. 1972); see Fed.R.Evid. 404(b). Here, the arsons, and Vera's role in them, were substantially similar. Harvey, Vera's husband, was generally responsible for the actual execution of the arsons. Vera, on the other hand, was consistently involved with "financial planning" and with clearing a house of its valuable possessions before it was burned. She was also always there to lend a "helping hand" to insure that the insurance proceeds were forthcoming. Based on this evidence, the jury could infer that Vera was involved in a well-organized pattern of arson.

After a thorough review of the record, we agree with the appellant that the evidence is insufficient to convict her of the arson at 3008 Third Ave. (Count 1, 3(a)). The government's treatment of the evidence supporting this arson does nothing to convince us otherwise. There is no mail fraud count connected with this arson.

### B. *Harvey and Hoyle*

Both Harvey and Hoyle assert that the evidence is insufficient to convict them of the murder of Ruth Elaine Peacock. (Count 1, 3(*1*)).

Under Georgia law, murder consists of: (1) unlawfully; (2) with malice aforethought; (3) causing the death of another human being. Ga.Code Ann. § 26–1101(a) (1978). Considered most favorably to the government, the wholly circumstantial evidence against Harvey and Hoyle reveals the following.

Ruth Elaine Peacock's body was found near Highway 39 in Quitman County, Georgia early Thanksgiving morning. An autopsy revealed that Ruth Elaine died of multiple gunshot wounds to the head sometime during the early morning hours on November 27, 1975.

George Cumbie testified that he heard Harvey say he would like to choke Ruth Elaine to death. Cumbie testified that on another occasion he heard Ray and Harvey discussing an "accidental" drowning of Ruth Elaine in Lake Oliver.

Furthermore, according to Cumbie, Hoyle admitted beating up Elaine in order to get her to sign custody release papers on their daughter, Brandy. In addition, Hoyle had thousands of dollars of insurance on his wife's life that named Brandy as the benefactor. Finally, Hoyle and Ruth Elaine had severe marital problems. Ruth Elaine had picked up a hitchhiker, Larry Ford, and had had sex with him on the spot. At the time of her death, Larry Ford was living with Ruth Elaine and Hoyle in their home.

Based on this evidence, a reasonable juror could conclude beyond a reasonable doubt that both Harvey and Hoyle had sufficient motives to murder Ruth Elaine.

However, there is very little evidence connecting Harvey and Hoyle to the actual crime.

The record shows that on the evening before Thanksgiving Harvey Peacock came into James Whatley's business and wanted to borrow his El Camino truck. Whatley also testified that Harvey asked Butch LeJune if he had any plans that night. LeJune replied that he did not. Harvey then instructed LeJune to stay close to the phone. Harvey called Whatley at approximately 4:30 a. m. the next morning and told him that his truck was parked at Whatley's shop.

No evidence places either Harvey, Hoyle, or one of their henchmen at the scene of the crime. Nor is there any evidence linking the appellants with the murder weapon. In sum, the entirety of the government's evidence merely suggests that Harvey was engaged in a task that required an El Camino truck, and the possible assistance of Butch LeJune, on the morning of the murder. Unexplained and suspicious circumstances are not sufficient to convict a person of murder. *Rodgers v. State*, 213 Ga. 797, 102 S.E.2d 10; *Young v. State*, 121 Ga. 334, 49 S.E. 256; *Park v. State*, 123 Ga. 164, 51 S.E. 317; *Reynolds v. State*, 170 Ga. 810, 154 S.E. 229; *Cornwell v. State*, 179 Ga. 668, 177 S.E. 235; *Redwine v. State*, 207 Ga. 318, 61 S.E.2d 481; *June v. State*, 213 Ga. 311, 99 S.E.2d 70.

The insufficiency of the government's evidence is not cured by Mary Nell Peacock's testimony that Harvey told her he was the only one who knew who killed Ruth Elaine and that it was going to stay that way. The government also attempts to buttress its case by arguing that the murder of Ruth Elaine fits into the same pattern as the arsons committed by Harvey and Hoyle. While these factors properly focus suspicion on Harvey and Hoyle, they do not constitute sufficient evidence to convict the appellants of murder. We find the evidence insufficient to convict Harvey and Hoyle of the murder charged in subparagraph 3(e) in Count 1.

## 348

### C. Double Jeopardy Arguments

■ Defendants note that the district court charged the jury that in order to convict under Count 1, the evidence does not have to show that the appellants participated in each and every racketeering act charged in that count; rather, the evidence need only show that each appellant participated in at least two of the racketeering acts. 18 U.S.C. § 1962(c). Appellants also note that the jury returned only a general verdict of guilty against each of the appellants on Count 1. Hence, appellants argue that if we reverse any of the racketeering acts charged in Count 1, we must reverse Count 1 because it is impossible to determine upon which two counts the jury relied in returning a guilty verdict. *United States v. Brown*, 583 F.2d 659, 669 (3d Cir. 1978).

In *Brown*, the Third Circuit adopts the reasoning of *United States v. Dansker*, 537 F.2d 40 (3d Cir. 1976). In *Dansker* Count 1 charged that the defendants had conspired to bribe two individuals, Ross and Serata. The district court instructed the jury that if the alleged conspiracy had as its illegal objective either the bribe of Ross or Serata it could convict the defendants. The jury returned a general verdict of guilty as to Count 1. Count II charged the substantive offense of bribery of Ross. Count III charged that the defendants bribed Serata. The Third Circuit found that the evidence was insufficient to support the defendants' convictions for bribing Serata (Count III). The court held that the evidence was sufficient to convict the defendants of bribing Ross (Count II).

The government argued that since the jury found the defendants "guilty of jointly bribing Mayor Ross (Count II) . . . it must have also determined that the Ross bribe was at least one of the conspiracy's objectives." *Id.* at 51. The court rejected this argument because "the crime of conspiracy is separate and distinct from the related substantive offense." *Id.* Therefore the court reversed, reasoning that "the possibility remains, albeit slim, that the jury found that the defendants engaged in a conspiracy to bribe Serata alone (Count III) in spite of its guilty verdict on Count II." *Id.*

Assuming, without deciding, that *Dansker* is correct the situation is different here. The danger, if any, in a conspiracy case alleging several objectives is that if one of the objectives is not supported by evidence, it cannot be determined whether or not the jury's verdict of guilty rested upon its conclusion that the defendants had an objective which can not be supported by the evidence. Unlike a *Dansker* conspiracy situation, conviction under 18 U.S.C. § 1962(c) requires only that the defendant be convicted of two acts of racketeering and that "the two or more predicate crimes must be related to the affairs of the enterprise but need not be related to each other." *United States v. Elliot*, 571 F.2d 880, 889 n.23 (5th Cir. 1978). Here, the record reveals that the jury found each of the appellants guilty of at least two predicate acts which were related to the affairs of Harvey's arson ring.

Pursuant to Fed.R.Crim.P. 31(e) the jury returned a special verdict requiring the appellants to forfeit the insurance proceeds they obtained from the arsons described in paragraph 3(a), (b), (c), (e), (g), (h), (i)(j), and (k) and from the murder in paragraph 3(*l*). To require forfeiture the jury must have necessarily determined that the appellants were guilty of the underlying crimes. Furthermore, Count 1 incorporated Counts 2–24. The jury returned a guilty verdict as to all these counts. Of course, we have reversed Vera's conviction for the arson described in Count 1, 3(a). We have also reversed Hoyle and Harvey's conviction for the murder described in Count 1, 3(*l*) and the related mail frauds in Counts 16–23. Nevertheless, based on the jury's special verdict and their verdict as to Counts 2–24, we find that each of the appellants were convicted by the jury of at least two racketeering acts which were related to the arson enterprise. To the extent *United States v. Brown*, 537 F.2d 40 (3d Cir. 1978) is contrary, we decline to follow it.

■ Appellants also contend that it violates the double jeopardy clause to impose consecutive and additional sentences on

them for the substantive mail fraud counts because those counts are incorporated in Count 1. Consecutive sentences may be imposed for two crimes if one "requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). It should be evident from simply reading the statutes that a RICO conviction requires proof of a fact which a single mail fraud conviction does not. We agree with the Ninth Circuit that it does not violate the double jeopardy Clause to impose consecutive sentences for a RICO count and mail fraud counts which also serve as racketeering acts in the RICO count. *United States v. Rone*, 598 F.2d 564, 571–72 (9th Cir. 1979).

### IV. Hearsay and Confrontation Clause Arguments

Harvey argues that the admission of four declarations by his coconspirators Butch LeJune and Darrell Brookins violated both his right to confrontation and the rules of hearsay. Count 24 charged Harvey with murdering LeJune and Brookins to insure their silence in the investigation of this case.

Our inquiry is made considerably easier by *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) in which the Supreme Court resolved the relationship between the rules of hearsay and the Confrontation Clause.

The Court held:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable.

Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.

*Ohio v. Roberts*, 100 S.Ct. at 2539.

Here, both prongs of the Supreme Court's test are met in regard to each declaration Harvey challenges. First, the unavailability of the declarants is indisputable; they are dead. Second, we can "infer the reliability" of these declarations because they all "fall within a firmly rooted hearsay exception."

■ The first declaration Harvey attacks comes from the testimony of A.L. Gravitt. Gravitt testified about a conversation he had with LeJune. In that conversation LeJune stated that he and Harvey torched the residence at 3615 East Britt David Road (Count 1, 3(h)) from the attic. LeJune also told Gravitt that Harvey wanted "to get [him] in the attic." Consequently, he made Harvey "come down first" from the attic.

Two exceptions to the hearsay rule are applicable to LeJune's statement. First, the statement is clearly admissible as a statement against penal interest. Fed.R. Evid. Rule 804(b)(3) (West 1975). Second, the statement can properly be considered a statement by a conspirator during the course and in furtherance of the conspiracy. 801(d)(2)(E).[1]

■ Coconspirator statements are admissible even when no conspiracy is charged if there is independent evidence of a concert of action in which the defendant was a participant. *United States v. Dawson*, 576

---

1. In order to admit a coconspirator's declaration in this circuit the district judge must first determine that there is substantial, independent evidence of a conspiracy. *United States v. James*, 590 F.2d 575, 581 (5th Cir. 1979) (en banc). In the alternative, he may admit the statement subject to its being connected up. *Id.* at 582. Regardless of which method the district court chooses, on appropriate motion at the conclusion of all the evidence the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. *Id.* We have held that this procedure is necessary to insure a minimum standard of reliability. Accordingly, the *James* requirements must be met in order for a declaration to pass muster under the rule of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). For a detailed explanation of the *James* requirements see *United States v. Ricks*, 639 F.2d 1305 (5th Cir. 1981).

F.2d 656, 658 (5th Cir. 1978); *Park v. Huff*, 506 F.2d 849, 859 (5th Cir. 1975). There is overwhelming independent evidence that Gravitt and LeJune were members of Harvey Peacock's arson ring. See Part I, *infra*. We have previously noted that the concept of furthering a conspiracy "must not be applied too strictly or the purpose of the exception would be defeated." *United States v. Patton*, 594 F.2d 444, 447 (5th Cir. 1979). LeJune's comments, which were made shortly after the fire at 3615 Britt David Road, served the conspiracy in two ways. First, Gravitt was informed of the arson ring's most recent "success." Second, Gravitt was informed that Harvey was a dangerous ringleader who had to be watched in order to insure one's own safety. Hence, under the standard of *United States v. Patton*, 594 F.2d 444 (5th Cir. 1979), LeJune's comments furthered the conspiracy of which he and Gravitt were a part.

The second declaration which Harvey attacks comes from the testimony of Richard Crane. Crane, who along with his wife conspired to burn his own house at 701 13th Ave. in Phenix City (Count 1, 3(j)), testified about a conversation he had with Butch LeJune. In that conversation LeJune told Crane that he "should have handled [his] situation" like LeJune handled his in the 3615 East Britt David Road fire. LeJune explained to Crane that he had arranged for Harvey to remove his furniture while LeJune was out of town so as not to cast suspicion on LeJune.

LeJune's discussion of insurance fraud techniques with Crane immediately after the fire at Crane's house is admissible as a coconspirator's declaration. *See United States v. Goodman*, 605 F.2d 870, 878 (5th Cir. 1979).

The third declaration which Harvey challenges comes from the testimony of Alicia LeJune House, who was named in the indictment as a participant but not as a defendant.

She testified about a conversation she had with her brother, Butch LeJune, before the Crane fire (Count 1, 3(j)). LeJune had asked her if Harvey could store "some building materials and stuff" on her property. Butch LeJune was clearly attempting to make preparations for the Crane fire. His statement is admissible as a coconspirator's declaration. Fed.R.Evid. 801(d)(2)(E).

The fourth declaration which Harvey challenges comes from the testimony of Carol Brookins, the widow of Darrell Brookins. She testified about comments made by her deceased husband immediately following a telephone conversation with Harvey. Darrell told her that Harvey had informed him that the investigation of this case had been stopped due to insufficient evidence. Harvey then told Darrell to get out of town.

Darrell's comments to his wife were properly admitted as present sense impressions. Fed.R.Evid. 803(1). Rule 803(1) provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded by the rule against hearsay. The underlying theory of this exception "is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." Advisory Committee Note to Rule 803(1). Darrell repeated Harvey's comments to his wife immediately after talking with Harvey on the phone. There was no time for him to consciously manipulate the truth. Both the letter and purpose of Rule 803(1) are severed by admitting Harvey's declaration. *See Doss v. Apache Powder Co.*, 430 F.2d 1317 (5th Cir. 1970).[2]

Harvey also challenges a declaration from the testimony of Mrs. Ruth Rhodes. Mrs. Rhodes testified about a conversation with her son-in-law, Hoyle Peacock. During that conversation Hoyle admitted burning houses at 3008 Third Avenue (Count 1, 3(a))

---

**2.** Harvey also argues that a statement of Darrell Brookins which linked him with the murder of Elaine Peacock should not have been admitted. This statement also occurred during the testimony of his wife, Carol Brookins. Our review of the record discloses that the statement was not admitted by the trial judge. Furthermore, the jury was properly instructed to disregard the statement immediately after it was uttered. Record, Vol. VII, at 174–176.

and at White Rock Road (Count 1, 3(h)). He then urged Ruth Rhodes to burn her house for insurance proceeds. He explained to Ruth Rhodes that the arson could be smoothly executed because "we have this crew that really knows what they're doing . . . Daddy [Harvey Peacock] and me and Butch [LeJune]." Record, Vol. V, at 129–130. This conversation took place after all the fires charged in the indictment had occurred. Nonetheless, it is an obvious attempt by Hoyle to further the Peacocks' pattern of arson. Accordingly, Hoyle's statements were properly admitted as co-conspirator declarations. There is no confrontation problem because Hoyle testified in his own behalf.

Finally, Hoyle challenges the admission of Ruth Rhodes' testimony regarding a telephone conversation she had with her daughter, Ruth Elaine Peacock, the night before Ruth Elaine was murdered. Ruth Elaine allegedly told her mother that "Hoyle was gone, she had no idea where he was at, they were separated; that he had taken her keys away from her and that she had no idea when or if she would ever see him again." Record, Vol. VIII, at 64. Hoyle argues that this statement was prejudicial because "the jury might have reasonably inferred that Elaine Peacock and [Hoyle] were through for good and that therefore, [Hoyle] might well have concluded that the best thing to do was to kill his wife and collect the insurance proceeds on her life." Brief of Appellant Hoyle Peacock at 26.

At trial Ruth Elaine's statement was admitted under the residual exception to the rule against hearsay. Fed.R.Evid. 804(b)(5). The government urges the highly sensible argument that Harvey and Hoyle have waived their right to confront Ruth Elaine Peacock because they killed her.

However, we need not resolve this issue. Ruth Elaine's statement serves the limited purpose of establishing a motive for Hoyle to kill her. As noted in Part II, *infra*, there is an overwhelming amount of evidence that Hoyle had an adequate motive to murder his wife. Ruth Elaine's statement simply reinforces this irrefutable

conclusion. Nonetheless our review of the evidence showed that it was insufficient to convict Harvey and Hoyle of murder. Accordingly, even if Ruth Elaine's statement was erroneously admitted the error is harmless.

Appellants' other arguments are without merit.

## V. *RICO Forfeiture*

The jury returned verdicts ordering the forfeiture of the insurance proceeds acquired by the appellants through their pattern of racketeering. The appellants contend that the indictment was defective because it did not set out with sufficient specificity the "property" or "interest" to be forfeited as required by Federal Rule of Criminal Procedure 7(c)(2).

Appellants attempt to bolster their argument by confining our examination of this issue to the language in paragraph 4 of Count 1 of the indictment. An indictment should be read as a whole to determine its meaning. *United States v. Ylda*, 643 F.2d 348, 352 (5th Cir. 1981); *United States v. Markham*, 537 F.2d 187, 192 (5th Cir. 1976). When this indictment is read as a whole, and particularly paragraph 3 of Count 1 which meticulously sets out the arsons and the precise amount of insurance proceeds the appellants gained from them, there can be no doubt that the appellants were given ample notice of the property the government sought to have forfeited.

Next appellants argue that 18 U.S.C. § 1963(a) does not authorize the forfeiture of the profits of the crime. They contend that § 1963 applies only to an interest in an enterprise. Hence, as the racketeering enterprise of which they were a part no longer exists, there can be no forfeiture in this case.

We do not write on a clean slate on this issue. *United States v. Martino*, 648 F.2d 367 (5th Cir., 1981) decides this issue in the appellants' favor. *Martino* is now pending in this court on motion for rehearing and suggestion of rehearing *en banc*. We are bound by *Martino* unless and until it be altered *en banc*.

*Conclusion*

In sum, we have found that there is insufficient evidence to convict Vera of the arson described in subparagraph (a) of Count 1. This does not require the reversal of Count 1 as to Vera. There were no mail fraud counts based on this arson.

We have also found that there is insufficient evidence to convict Harvey and Hoyle of the murder described in subparagraph (*l*) of Count 1. This does not require the reversal of Count 1 as to Harvey and Hoyle. However, the mail frauds based on this murder, Counts 16–23, are reversed.

Finally, bound by *United States v. Martino* we reverse the district court's forfeiture order.

In all other respects, the jury's verdict is affirmed.

AFFIRMED in part; REVERSED in part.