George Washington COOPER, III, Jerry Herbert Jones, Ferrol "Bud" McKinney, Curtis R. Snipes, John C. McCulloch

v.

UNITED STATES of America.

Nos. 80–67–Cr–J–M, 85–1045–Civ–J–12, 85–1046–Civ–J–12, 85–1074–Civ–J–12, 85–1086–Civ–J–12, 85–1150–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

April 4, 1986.

Eugene Loftin, Jacksonville, Fla., for George Washington Cooper, III, Jerry Herbert Jones and Curtis R. Snipes.

David R. Fletcher, Jacksonville, Fla., for Ferrol "Bud" McKinney.

Hugh A. Carithers, Jr., Jacksonville, Fla., for John C. McCulloch.

Curtis Fallgatter, Asst. U.S. Atty., Jacksonville, Fla., for U.S.

## ORDER AND MEMORANDUM OPINION

MELTON, District Judge.

### I. *Introduction*

Each of the five above-named petitioners has moved, pursuant to 28 U.S.C. § 2255 (1982), to set aside his convictions in Middle District of Florida Criminal Case No. 80–67–Cr–J–12. All petitioners rely on the opinion of *Dowling v. United States*, —— U.S. ——, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) in support of their motions. Before discussing the applicability of that opinion to the instant case, a brief review of the procedural history of this prosecution is appropriate.

On July 29, 1980, a 78–count indictment was returned in this case. The indictment charged six different types of criminal violations: RICO (Racketeering Influenced Corrupt Organizations) conspiracy, 18 U.S.C. § 1962(d) (1982)[1]; RICO substantive, 18 U.S.C. § 1962(c) (1982); interstate transportation of stolen property, 18 U.S.C. § 2314 (1982); wire fraud, 18 U.S.C. § 1343 (1982); copyright conspiracy, 18 U.S.C. § 371 (1982); and copyright substantive violations, 17 U.S.C. §§ 106(3) and 506(a) (1982). The Table of Petitioners and Counts Convicted (Appendix I) sets forth a comprehensive listing of the various counts for which each petitioner was convicted.

---

1. In citing to the statutes under which petitioners were charged, the Court will refer to the latest edition of the United States Code, even though petitioners were officially charged under earlier editions of the Code. The Court does so for ease of reference and in this regard would note that the various statutes have not been revised since petitioners' indictment in 1980.

The indictment in this case arose from the discovery of a group of individuals involved in large scale distribution of "pirate" eight-track and cassette tapes.[2] The copyright violations charged in the indictment alleged that petitioners criminally infringed the copyright in certain sound recordings. The wire fraud violations alleged that petitioners used the telephone system in furtherance of a scheme to defraud copyright owners, sound recording companies, recording artists and musicians, the public and other individuals and businesses dealing in and purchasing phonorecords. The interstate transportation of stolen property counts involved herein charged that petitioners were engaged in the interstate transportation of pirate tapes of a value in excess of $5,000. Finally, the RICO conspiracy and substantive counts alleged that the above-named petitioners were employed by and associated with a criminal enterprise, which in this case consisted of a group of individuals associated in fact to operate an eight-track and cassette tape copyright infringement scheme. Petitioners were alleged to have participated in the conduct of the enterprise's affairs through a pattern of racketeering activity which consisted of predicate acts of interstate transportation of stolen property and wire fraud.

The trial jury was sworn and evidence in the case was first presented on January 26, 1981. The government rested its case in chief on February 19, 1981, and all evidence was concluded on February 23, 1981. The jury verdicts were returned on March 4, 1981, and petitioners were sentenced on May 22, 1981. The sentences received by petitioners are set forth in the Table of Sentences (Appendix II).

Petitioners appealed their convictions, alleging, *inter alia*, that the interstate transportation of infringed copyrighted sound recordings did not violate the National Stolen Property Act, 18 U.S.C. § 2314 (1982). This contention was rejected on appeal and petitioners' convictions were affirmed. *United States v. Drum*, 733 F.2d 1503 (11th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 543–44, 83 L.Ed.2d 431 (1984). Approximately six months after the United States Supreme Court denied *certiorari* in *Drum*, the Supreme Court rendered its decision in *Dowling v. United States,* — U.S. —, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). Petitioners responded to the issuance of this decision by filing their respective § 2255 motions, which were received herein on various dates between August 6, 1985, and September 17, 1985.

## II. *Jurisdiction over the Petitions*

■ A threshold issue that must be addressed by the Court is whether petitioners are entitled to collaterally attack their federal convictions on the basis that the *Dowling* decision has changed the substantive law applicable to their cases. In *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the United States Supreme Court established the rule that a § 2255 petitioner is not precluded from raising a legal issue which was determined against him in a direct appeal if new law has been made since the trial and appeal. *Id.* at 341–42, 94 S.Ct. at 2302–03. Furthermore, the fact that a claim is grounded "in the laws of the United States," rather than in the Constitution, does not affect its viability in a § 2255 petition. *Id.* at 346, 94 S.Ct. at 2305. However, the Supreme Court noted that not every "asserted error of law can be raised on a § 2255 motion." *Id.* Rather, a court must inquire as to whether the claimed error represents "a fundamental defect which inherently results in a complete miscarriage of justice." *Id., citing Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Applying these doctrines to the case *sub judice*, the Court has determined that it has jurisdiction over the instant § 2255 pe-

---

**2.** The term "pirate" tape, as used in this particular indictment, refers to "unauthorized and unlawfully made phonorecords and tapes of duly copyrighted sound recordings." Indictment, Count 1, section 1(a).

titions. These petitions arise from a significant change in the law effected by *Dowling v. United States*, — U.S. —, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). Because the application of this decision to petitioners' convictions may result in a finding that these convictions were "fundamentally defective," the Court will examine the merits of the § 2255 petitions now presently pending.

III. *Whether the Dowling Decision Should be Given Retroactive Effect*

■ As noted above, the § 2255 petitions presently under consideration are premised upon the United States Supreme Court's decision in *Dowling v. United States*, — U.S. —, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). This decision held that criminal penalties could not be imposed under the National Stolen Property Act, 18 U.S.C. § 2314 (1982), for the interstate transportation of pirate records or tapes. The crime of interstate transportation of stolen property under 18 U.S.C. § 2314 (1982) consists of the interstate transportation of goods, wares or merchandise having a value in excess of $5,000 by a defendant who knows that the goods have been "stolen, converted or taken by fraud." In *Dowling*, the Supreme Court held that "phonorecords that include the performance of copyrighted musical compositions for the use of which no authorization has been sought nor royalties paid [are not] 'stolen, converted or taken by fraud' for the purposes of § 2314." *Dowling v. United States*, — U.S. at —, 105 S.Ct. at 3133. Because the criminal prosecutions that are the subject of the pending § 2255 petitions involved, *inter alia*, charges under 18 U.S.C. § 2314 (1982) stemming from the interstate transportation of pirate tapes, petitioners argue that *Dowling* has a significant impact upon their convictions. Before the Court can address the various arguments set forth by petitioners, however, it must determine whether the holding in *Dowling* should be given retroactive effect.

A review of relevant case law reveals the existence of divergent tests on the question of retroactivity. In cases such as this involving the retroactivity of a nonconstitutional decision, courts have generally applied a three-part test which involves questions concerning the novelty of the decision and the equities involved in applying the decision to a given case. *See, e.g., Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). A second test, however, merely looks at whether "the new principle deprived the trial court of its very authority to convict or punish a criminal defendant in the first place." *Acoff v. Abston*, 762 F.2d 1543, 1549 (11th Cir.1985). This test, premised on "fundamental fairness and due process" is applicable in cases where a defendant has been convicted of an act that the law no longer classifies as criminal. *See McClain v. United States*, 643 F.2d 911, 913 (2d Cir.), *cert. denied*, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981). Such a conviction constitutes a "complete miscarriage of justice" and mandates § 2255 relief. *Id., citing Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974).

The Court is of the opinion that this latter test is appropriately applied to the instant case. Because the *Dowling* decision held that the National Stolen Property Act did not cover the activity that petitioners were charged with engaging in, this Court lacked jurisdiction to convict petitioners under that statute. Accordingly, the Court will vacate the convictions of petitioners under counts alleging interstate transportation of stolen property. The Table of Petitioners and Counts Convicted (Appendix I) illustrates that this ruling will result in the vacatur of petitioner Jerry Herbert Jones' convictions under Counts 4–9, petitioner John C. McCulloch's convictions under Counts 4–9 and petitioner Ferrol "Bud" McKinney's conviction under Count 3.

IV. *Dowling Does Not Affect Wire Fraud Convictions*

■ Having determined that the *Dowling* decision should be applied retroactively, and having drawn the obvious con-

clusion from such a determination that petitioners' convictions for interstate transportation of stolen property must be vacated, the Court will now examine petitioners' contentions concerning the more subtle effects of *Dowling* upon their convictions.

All five petitioners were convicted of various counts of wire fraud under 18 U.S.C. § 1343 (1982) (see Appendix I). Petitioners now challenge these convictions on the following basis. First, petitioners note that a wire fraud conviction requires not only that sounds be transmitted by wire, but also that such sounds be transmitted for the purpose of executing a scheme or artifact to defraud. Petitioners next contend that it is possible, given the language of the indictment describing the scheme to defraud, that their wire fraud convictions were based on a jury finding that petitioners were involved in a scheme to defraud involving the interstate transportation of pirate tapes. Because petitioners contend that *Dowling* stands for the proposition that such activity is not fraudulent or unlawful, they argue that their wire fraud convictions must be set aside.

The Court is of the opinion that petitioners' argument is without merit. Count 1, Section 3(b) of the indictment describes the scheme to defraud which served as a basis for petitioners' wire fraud convictions (the allegations of Count 1, section 3(b) were incorporated by reference in the wire fraud charges contained in Counts 11–49). Section 3(b), as set forth in full in Appendix III, describes a scheme to fraudulently deprive "copyright owners, sound recording companies and recording artists and musicians" of their rightful income and royalties and to fraudulently represent to the public and to others that certain sound recordings "were produced by the manufacturers identified on the labels of said products" when, in fact, the products were not legitimately or lawfully reproduced. Notably absent from this section of the

indictment is any allegation that the scheme to defraud consisted of the interstate transportation of stolen property. Indeed, the only reference to interstate transportation of stolen property is in that part of section 3(b) which describes the ways and means by which the scheme to defraud was carried out. In this Court's opinion, *Dowling* cannot be interpreted so as to remove from the reaches of the wire fraud statute a scheme to defraud copyright owners, musicians and the public from the protections afforded by the copyright laws of this country. Accordingly, the Court will uphold all of petitioners' convictions involving the crime of wire fraud.

## V. *Dowling Does Not Affect RICO Convictions*

The petitioners herein were each convicted of engaging in a criminal enterprise (Count 2) and conspiring to engage in a criminal enterprise (Count 1) in violation of the RICO Act, 18 U.S.C. § 1962(c) and (d) (1982). Prerequisite to a conviction under this statute is a finding that the members of the criminal enterprise were involved in a "pattern of racketeering activity," which is defined as "at least two acts of racketeering activity one of which occurred after [October 15, 1970] and the last of which occurred within ten years." 18 U.S.C. § 1961(5) (1982). Both of the RICO counts under which petitioners were convicted alleged predicate acts of racketeering activity consisting of wire fraud and interstate transportation of stolen property.[3] Based on the *Dowling* decision, petitioners now challenge their RICO convictions claiming that these convictions are not supported by the required predicate acts.

■ Initially, the Court would note that while all petitioners seek relief from their RICO convictions and proffer the same arguments as to which such relief should be

---

**3.** Under Count 1 of the indictment charging RICO conspiracy, the crime of mail fraud is set forth as a predicate act of racketeering activity. Indictment, Count 1, section 3(c). However, because there is no separate jury verdict on mail fraud, it cannot be considered as one of the predicate acts supporting petitioners' RICO convictions. Thus, the Court need not address its inclusion in Count 1 of the indictment.

granted,[4] petitioners' cases are not identical. As the Table of Petitioners and Counts Convicted (Appendix I) reveals, only petitioners Jones, McCulloch and McKinney were convicted of interstate transportation of stolen property. Petitioners Cooper and Snipes thus have no standing to attack their RICO convictions by claiming that such convictions might have been based on predicate acts of interstate transportation of stolen property. It is clear that the RICO convictions of these petitioners were based on predicate acts of wire fraud. Because the Court has already determined the validity of the wire fraud convictions of petitioners Cooper and Snipes, their RICO convictions will likewise be upheld.

■ As to petitioners Jones, McCulloch and McKinney, however, the Court must now examine the status of their RICO convictions in light of *Dowling* and the elimination of interstate transportation of stolen property as a permissible predicate. In arguing that their convictions should be set aside, petitioners rely on *United States v. Dansker*, 537 F.2d 40 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) and *United States v. Brown*, 583 F.2d 659 (3d Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979).

In the former case, the Third Circuit reversed a conspiracy conviction after finding that there was insufficient evidence to support one of the alleged objectives of the conspiracy. The Court reached this decision even while acknowledging that there was sufficient evidence to support other alleged objectives of the conspiracy. The Court reasoned that there was no way to tell whether the jury had convicted defendant of conspiracy based on an objective that was not supported by the evidence. In *United States v. Brown*, 583 F.2d 659 (3d Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), this ratio-

nale was applied to a case involving a RICO count. The court here found insufficient evidence to support defendants' convictions under two of the four substantive counts. Concerned that the convictions under these two counts might have been the predicate acts relied on by the jury in returning the RICO verdicts, the court stated that "reasoning analogous to that in *Dansker* requires reversal of the racketeering counts." *Id.* at 669.

It seems clear that if the above-cited cases are applied herein, this Court would be required to set aside petitioners' RICO convictions. In this circuit, however, there is some indication of an unwillingness to follow this precedent. In *United States v. Peacock*, 654 F.2d 339 (5th Cir.1981), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983)[5], the court refused to reverse defendants' RICO convictions even though it found insufficient evidence to sustain convictions under certain of the substantive counts. In upholding the RICO convictions, the court first distinguished *Dansker* by explaining the differences between a conspiracy charge and a RICO charge. *Id.* at 348. The court then noted the number of remaining convictions which could serve as predicate acts for the RICO count and concluded that "each of the appellants were convicted by the jury of at least two racketeering acts which were related to the [criminal] enterprise. To the extent *United States v. Brown*, 583 F.2d 659 (3d Cir.1978) is contrary [to our present holding], we decline to follow it." *Id.*

Petitioners have attempted to distinguish *Peacock* on the basis that a forfeiture question was involved in that case and special verdicts were returned. Furthermore, petitioners claim that *Peacock* is not applicable to the RICO conspiracy counts because a RICO substantive count was dealt

---

4. While petitioners filed individual § 2255 motions in the instant case, petitioners' arguments in the main are set forth in a Consolidated Memorandum and Reply, filed herein on November 6, 1985, and joined in by all five petitioners.

5. Because the *Peacock* decision was issued prior to October 1, 1981, it is binding precedent in this circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*).

with in that case. While these distinctions may be of some significance, the Court is nevertheless of the opinion that *Peacock* indicates a rejection of the *Dansker* rationale in this circuit, at least in the RICO context. Based on this interpretation, the Court is bound to uphold petitioners' RICO convictions if a minimum of two predicate acts are left after discounting the vacated convictions. In this regard, the Court would note that each petitioner was found guilty of multiple counts of wire fraud, as is illustrated in Table of Substantive Counts and Predicate Acts (Appendix IV). Thus, like the court in *Peacock*, this Court finds that each petitioner was convicted by the jury of at least two racketeering acts related to the criminal enterprise and accordingly, the RICO convictions of petitioners Jones, McKinney and McCulloch will not be disturbed.

## VI. *Dowling Does Not Affect the Admissibility of Wiretap Evidence*

■ At the trial in this case, the government introduced into evidence numerous taped conversations which it had obtained through a wiretap authorized by this Court. Prior to trial, petitioners sought to suppress the evidence derived from the wiretap. Now at this post-conviction stage, petitioners once again attack the wiretap evidence and upon this basis seek to have their convictions on all counts set aside.

An application for an order authorizing the interception of wire communications was filed in this case on March 16, 1979, and on that same day, the Court entered such an order. In issuing the wiretap order, the Court found probable cause to believe that the following four categories of "predicate" or "enumerated" offenses were being committed: (1) interstate transportation of stolen property in violation of 18 U.S.C. § 2314 (1982); (2) receipt of stolen property in violation of 18 U.S.C. § 2315 (1982); (3) associating with a criminal enterprise in violation of 18 U.S.C. § 1962(c) (1982); and (4) conspiring to commit the above-enumerated offenses in violation of 18 U.S.C. § 371 and § 1962(d)

(1982). *See* In Camera Order Authorizing Interception of Wire Communications, at 1–2. The petitioners now challenge the wiretap on the ground that the crime of interstate transportation of stolen property was one of the enumerated offenses recited in support of the authorization order. Petitioners also reiterate their attack on their RICO convictions in this context and thus claim that the wiretap order was not properly supported by a finding of probable cause regarding any viable criminal offense.

It is well-settled that the law with respect to probable cause for a wiretap intercept is the same as for a search warrant. *See, e.g., United States v. Hyde*, 574 F.2d 856 (5th Cir.1978). It is also settled that when a warrant is challenged on the basis of a deficiency in the affidavit, a court may uphold the warrant if, disregarding the challenged material, there is sufficient information provided in the affidavit to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). Applying this principle to the wiretap order in the case *sub judice*, the Court finds that there was sufficient probable cause to support its issuance. Disregarding the crime of interstate transportation of stolen property as one of the enumerated offenses, the wiretap order is still supported by the alleged RICO violations. Because the petitioners' RICO convictions were upheld in an earlier section of this Order, the Court now concludes that petitioners have no basis upon which to attack the wiretap order and the admissibility of the wiretap evidence.

## VII. *Dowling Does Not Constructively Amend the Indictment*

■ The final argument raised by petitioners concerns the effect of the *Dowling* decision on the indictment under which petitioners were tried and convicted. Petitioners contend first that *Dowling* has effectively modified the indictment in this case. Petitioners then rely on the settled principle of law holding that an indictment

may not be amended or modified and argue that the concerns of fairness and due process behind this principle apply to their situation. Specifically, petitioners contend that their trial was tainted by constant references to interstate transportation of stolen property and that defense counsel were hindered in preparing for and trying the case because they had to attempt to refute the interstate transportation of stolen property charges.

For the following reasons, the Court is of the opinion that petitioners' "constructive amendment" argument is without merit. First, petitioners have cited no case law to support their contention that a post-conviction change in the law results in a constructive amendment of an indictment. Second, it is difficult to discern how the situation in the present case varies greatly from a case in which convictions are reversed on appeal based on insufficient evidence or other such ground. Third, it is anomalous for petitioners to argue on the one hand that their convictions should be modified based on *Dowling* and on the other hand to argue that any modifications effected by *Dowling* impermissably amend their indictment. Thus, the Court rejects the argument that petitioners were tried and convicted under a defective indictment.

## VIII. *Resentencing of Petitioners*

Having determined that the interstate transportation of stolen property convictions of petitioners Jones, McCulloch and McKinney will be vacated, the Court must now examine the effect of this action on the sentences originally received by petitioners. If the Court does not resentence petitioners, the status of their sentences is illustrated by the Table of Sentences Without Interstate Transportation of Stolen Property Counts (Appendix V). As that table illustrates, petitioners Snipes and Cooper have no interstate transportation of stolen property convictions, and are thus unaffected by the retroactive application of *Dowling*. Petitioner Jones, who received a six-year consecutive sentence for his interstate transportation of stolen property con-

victions, will be left with a five-year concurrent sentence on Count 14, and a four-year aggregate sentence on Counts 1 and 2, which nets a total aggregate sentence of five years. Similarly, petitioner McCulloch will be left with an aggregate sentence of four years and petitioner McKinney will be left with an aggregate sentence of six years.

As can be discerned from a comparison of the Table of Sentences in Appendix III and the Table of Sentences in Appendix V, the effect of vacating the interstate transportation of stolen property convictions without resentencing the petitioners would be to thwart the sentencing plan of this Court. For example, petitioner Jones was convicted of the greatest number of felonies herein and received the longest sentence imposed by the Court. After the vacatur of Jones' interstate transportation of stolen property convictions, however, Jones will be left with a sentence of five years—four years less than petitioners Snipes and Cooper. Rather than countenance these anomalous results, the Court will vacate the sentences of Jones, McCulloch and McKinney and resentence them for an appropriate term on the remaining counts.

The authority to impose new sentences on petitioners, including sentences of longer duration than were originally imposed, can be found in the case law spawned by *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). *See, e.g., Pennsylvania v. Goldhammer*, —— U.S. ——, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (when the conviction under which defendant was originally sentenced is vacated, defendant may be resentenced under counts where sentence had previously been suspended); *United States v. Jefferson*, 760 F.2d 821 (7th Cir.1985) (after certain of defendant's convictions were reversed and her total sentence vacated, trial judge did not violate double jeopardy clause by imposing harsher sentence on remand), *vacated on other grounds*, —— U.S. ——, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985); *McLain v. United States*, 676 F.2d 915 (2d Cir.) (after entire sentence vacated upon a § 2255 challenge

to the sentence received on one count, imposition of greater sentence on remaining count does not violate double jeopardy clause), *cert. denied*, 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). While the Court's power to resentence petitioners Jones, McKinney and McCulloch thus cannot be disputed,[6] it should be noted that the Court has no authority to alter the sentences of petitioners Snipes and Cooper as it has taken no action with regard to their convictions. Accordingly, the sentences of petitioners Snipes and Cooper will not be disturbed.

The Court will now briefly discuss the logistics of the resentencing of petitioners Jones, McKinney and McCulloch. First, to avoid any challenge to the lawfulness of petitioners' incarceration during the interim period between the date of this Order and the date of resentencing, the Court in this Order will merely announce its intention to vacate petitioners' interstate transportation of stolen property convictions and the sentences imposed on all counts. The Court will actually enter an order of vacatur at the time of resentencing.

Second, the Court has determined that petitioners must be present at their resentencing. *See Williamson v. United States*, 265 F.2d 236 (5th Cir.1959).

Having addressed all matters raised in the respective § 2255 petitions, it is now

ORDERED AND ADJUDGED:

1. That the decision of the United States Supreme Court in *Dowling v. United States*, — U.S. ——, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) shall be given retroactive application herein;

2. That by separate order to be entered at the time of resentencing, the Court will vacate all convictions received by petitioners for the crime of interstate transportation of stolen property. Specifically, the Court will vacate Jerry Herbert Jones' convictions under Counts 4–9, John C. McCulloch's convictions under Counts 4–9 and Ferrol "Bud" McKinney's conviction under Count 3;

3. That by separate order to be entered at the time of resentencing, the Court will vacate all sentences received by petitioners Jerry Herbert Jones, John C. McCulloch and Ferrol "Bud" McKinney;

4. That by separate order, a resentencing hearing shall be set for petitioners Jerry Herbert Jones, John C. McCulloch and Ferrol "Bud" McKinney. The above-named petitioners shall be present at their resentencing; and

5. That all other relief sought by petitioners Jerry Herbert Jones, John C. McCulloch, Ferrol "Bud" McKinney, Curtis R. Snipes and George Washington Cooper, III, is hereby denied.

APPENDIX I

TABLE OF PETITIONERS AND COUNTS CONVICTED

| PETITIONER | RICO CONSP | RICO SUB | ITSP | WIRE FRAUD | COPYRIGHT CONSP | COPYRIGHT SUB |
|---|---|---|---|---|---|---|
| JONES | 1 | 2 | 4–9 | 13–19, 21 | 50 | —— |
| McCULLOCH | 1 | 2 | 4–9 | 20–24 | 50 | —— |
| SNIPES | 1 | 2 | —— | 13, 25–28 | 50 | —— |
| McKINNEY | 1 | 2 | 3 | 29–31, 33–34 | 50 | 51–54 65 |
| COOPER | 1 | 2 | —— | 38, 40–44 | 50 | —— |

**6.** On January 6, 1986, the Court held a hearing on the instant § 2255 petitions. At that time, counsel for petitioners and counsel for the government agreed that the Court had the authority to resentence petitioners.

APPENDIX II

TABLE OF SENTENCES

JONES

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |
| 4 | 2 Yrs –  "  Ct. 2 |
| 5 | 2 Yrs –  "  Ct. 4 |
| 6 | 2 Yrs –  "  Ct. 5 |
| 7 | 2 Yrs – concurrent to Ct. 1 |
| 8 | 2 Yrs –  "  " |
| 9 | 2 Yrs –  "  " |
| 13 | 2 Yrs –  "  " |
| 14 | 5 Yrs – concurrent to Cts. 1, 2, and 4 |
| 15 | 5 Yrs –  "  " |
| 16 | 5 Yrs –  "  " |
| 17 | 5 Yrs –  "  " |
| 18 | 5 Yrs –  "  " |
| 19 | 5 Yrs –  "  " |
| 21 | 5 Yrs –  "  " |
| 50 | 1 Yr  – concurrent to Ct. 1 |

TOTAL = 10 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

McCULLOCH

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |
| 4 | 1 Yr  –  "  Ct. 2 |
| 5–9 each | 2 Yrs – concurrent to Ct. 1 |
| 20–24 each | 2 Yrs –  "  " |
| 50 | 1 Yr  –  "  " |

TOTAL = 5 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

SNIPES

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |
| 13 | 2 Yrs –  "  Ct. 2 |
| 25 | 2 Yrs –  "  Ct. 13 |
| 26 | 1 Yr  –  "  Ct. 25 |
| 27 | 3 Yrs – concurrent to Cts. 1 and 2 |
| 28 | 3 Yrs –  "  " |
| 50 | 1 Yr  –  "  Ct. 1 |

TOTAL = 9 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

McKINNEY

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |
| 3 | 2 Yrs –  "  Ct. 2 |

**186**

APPENDIX II—Continued

McKINNEY

| COUNT | SENTENCE | | |
|-------|----------|---|---|
| 29 | 2 Yrs – | " | Ct. 3 |
| 30–31 | 3 Yrs – concurrent to Cts. 1 and 2 | | |
| 33–34 | 3 Yrs – | " | " |
| 50 | 1 Yr – | " | Ct. 1 |
| 51–54 | 1 Yr – | " | " |
| 65 | 1 Yr – | " | " |

TOTAL = 8 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

COOPER

| COUNT | SENTENCE | | |
|-------|----------|---|---|
| 1 | 2 Yrs | | |
| 2 | 2 Yrs – consecutive to Ct. 1 | | |
| 38 | 2 Yrs – | " | Ct. 2 |
| 40 | 2 Yrs – | " | Ct. 38 |
| 41 | 1 Yr – | " | Ct. 40 |
| 42–44 each | 2 Yrs – concurrent to Ct. 1 | | |
| 50 | 1 Yr – | " | " |

TOTAL = 9 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

---

## APPENDIX III

### INDICTMENT, COUNT 1

3. (b.) It was further a part of said conspiracy that the defendants would directly and indirectly, willfully and knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signs, signals and sounds, that is, telephone communications, for the purpose of executing a scheme and artifice to defraud copyright owners, sound recording companies, recording artists and musicians, the public and other individuals and businesses dealing in & purchasing phonorecords, tapes and sound recordings, and thereby,

1) fraudulently depriving copyright owners, sound recording companies, and recording artists and musicians of their rightful income and royalties from the sale of phonorecords, tapes and sound recordings;

2) fraudulently representing to the public and to other individuals and businesses dealing in and purchasing the phonorecords, tapes and sound recordings that certain of said sound recordings were produced by the manufacturers identified on the labels of said products, when in truth and in fact said manufacturers and the address-es therefor were false, fictitious and non-existent and said phonorecords, tapes and sound recordings were not reproduced and distributed by companies and individuals legally authorized to do so.

It was a part of said scheme and artifice to defraud that the defendants would obtain copies of legitimate copyrighted sound recordings (L.P.'s, 45 RPM's, and tapes) from which they would record master tapes. Said master tapes were utilized to reproduce and duplicate such sound recordings on high-speed duplicators which produced (hubs) pancakes from which individual tapes were cut and packaged into individual cartridges. Labels were affixed to the individual tapes, which labels generally reflected a manufacturer and address, both of which were false, fictitious and non-existent. Said hubs (pancakes) and finished tapes were then distributed and sold to various tape manufacturers, wholesalers and retailers throughout a multi-state area including Florida, North Carolina, South Carolina, Maine, Alabama, Georgia, Mississippi, Louisiana, Kentucky, Tennessee, Virginia, West Virginia and New York, as well as Canada.

It was further a part of said scheme and artifice to defraud that the aforesaid repro-

duction, duplication, recording and distribution was performed unlawfully and without the authorization of the copyright owners.

It was further a part of the said scheme and artifice to defraud that information regarding law enforcement activity and methods and means to avoid detection would be communicated between and among the parties to the said scheme and artifice; which above acts are indictable under Title 18, United States Code, Section 1343, including but not limited to those acts in a pattern of racketeering activity which are charged substantively in Counts ELEVEN through FORTY–NINE of this Indictment, which are realleged and incorporated by reference in this Count as if set forth fully herein.

APPENDIX IV

SUBSTANTIVE COUNTS/PREDICATE ACTS

| PETITIONER | ITSP | WIRE FRAUD | TOTAL | TOTAL W/O ITSP |
|---|---|---|---|---|
| Jones | 4–9 | 13–19, 21 | 14 | 8 |
| McCulloch | 4–9 | 20–24 | 11 | 5 |
| Snipes | —— | 13, 25–28 | 5 | 5 |
| McKinney | 3 | 29–31, 33–34 | 6 | 5 |
| Cooper | —— | 38, 40–44 | 6 | 6 |

APPENDIX V

TABLE OF SENTENCES WITHOUT INTERSTATE TRANSPORTATION OF STOLEN PROPERTY COUNTS

JONES

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |
| 13 | 2 Yrs – concurrent to Ct. 1 |
| 14 | 5 Yrs – concurrent to Cts. 1, 2 |
| 15 | 5 Yrs – " " |
| 16 | 5 Yrs – " " |
| 17 | 5 Yrs – " " |
| 18 | 5 Yrs – " " |
| 19 | 5 Yrs – " " |
| 21 | 5 Yrs – " " |
| 50 | 1 Yr – concurrent to Ct. 1 |

TOTAL = 5 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

McCULLOCH

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |
| 20–24 each | 2 Yrs – concurrent to Ct. 1 |
| 50 | 1 Yr – " " |

TOTAL = 4 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

SNIPES

| COUNT | SENTENCE |
|---|---|
| 1 | 2 Yrs |
| 2 | 2 Yrs – consecutive to Ct. 1 |

SNIPES

| COUNT | SENTENCE | | |
|---|---|---|---|
| 13 | 2 Yrs – | ″ | Ct. 2 |
| 25 | 2 Yrs – | ″ | Ct. 13 |
| 26 | 1 Yr – | ″ | Ct. 25 |
| 27 | 3 Yrs – concurrent to | | Cts. 1 and 2 |
| 28 | 3 Yrs – | ″ | ″ |
| 50 | 1 Yr – | ″ | Ct. 1 |

TOTAL = 9 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

MCKINNEY

| COUNT | SENTENCE | | |
|---|---|---|---|
| 1 | 2 Yrs | | |
| 2 | 2 Yrs – consecutive to | | Ct. 1 |
| 29 | 2 Yrs – | ″ | Ct. 3 |
| 30–31 | 3 Yrs – concurrent to | | Cts. 1 and 2 |
| 33–34 | 3 Yrs | ″ | ″ |
| 50 | 1 Yr | ″ | Ct. 1 |
| 51–54 | 1 Yr | ″ | ″ |
| 65 | 1 Yr | ″ | ″ |

TOTAL = 6 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).

COOPER

| COUNT | SENTENCE | | |
|---|---|---|---|
| 1 | 2 Yrs | | |
| 2 | 2 Yrs – consecutive to | | Ct. 1 |
| 38 | 2 Yrs – | ″ | Ct. 2 |
| 40 | 2 Yrs – | ″ | Ct. 38 |
| 41 | 1 Yr – | ″ | Ct. 40 |
| 42–44 | 2 Yrs – concurrent to | | Ct. 1 |
| 50 | 1 Yr – | ″ | ″ |

TOTAL = 9 Yrs.

Eligible for parole per 18 U.S.C. 4205(b)(2).